ALBANY,
January, 1823.

Le Roy
v.
Mayor, &c.
of N. York.

Le Roy and others *against* The Mayor, Aldermen, and Commonalty of the City of New-York.

This Court has a general superintending power to award a *certiorari*, not only to inferior Courts, but to persons invested by the legislature with power over the property and rights of others, for the purpose of supervising their proceedings, even in cases where they are authorized finally to hear and determine. As where the Corporation of the city of *New-York* were authorized by statute, to cause sewers to be made in the city, and to make a just and equitable assessment of the expense thereof, on the owners and occupants of houses and lots intended to be benefited thereby; though the commissioners, appointed for the purpose of making such assessment, have a discretion in determining the *quantum* of *benefit* which each owner or occupier of a house or lot, within the district, may derive from the common sewer, and with the exercise of which discretion this Court cannot interfere; yet, as to the *persons* who are to be assessed, which must depend on the sound construction of the law, as applied to the circumstances of the case, the Court has power to establish the principle on which the assessment is to be made, and to compel the Corporation to act on such principle.

A WRIT of *certiorari* was issued, directed to the Mayor, Aldermen, and Commonalty of the city of *New-York*, returnable in *August* term, 1820. The certiorari recited, that the Corporation of *New-York*, by virtue of the "Act to reduce the several laws relative to the city of *New-York*, into one statute," passed *April* 9, 1813, (2 *N. R. L.* 342—460.) had caused a common sewer to be made in *Canal-street*, in the said city, from *Washington-street* to *Collect-street*, for the purpose of receiving the water from a large and extensive district, or section of the city, (particularly described,) and conveying the same to the *Hudson* river, and appointed *Peter Hawes, Roger Strong*, and *John Targee*, to make a just and equitable assessment of the expense thereof, (amounting, with the incidental charges, to about 98,000 dollars,) among the owners and occupiers of all the houses and lots intended to be benefited thereby, in proportion, or as nearly as might be, to the advantage which each should be deemed to acquire. That the commissioners named, accordingly proceeded to make the assessment, by which they assessed the whole expense of building the sewer on the plaintiffs, the owners and occupiers of houses and lots upon *Canal-street*, and within about four hundred feet thereupon, being a small part of the houses and lots within the district or section of the city from whence the water is to be received into the sewer, to be conveyed by it to the *Hudson* river; to which assessment, objections, in writing, were made by the plaintiffs; but the assessment had, nevertheless, been confirmed by the Corporation, and a collector appointed to collect the sums assessed upon the parties named,

med therein. That the district or section of the city, from which, by the permanent regulation of the streets and grounds, the water was to run into the sewer, and be conveyed to the river, contained about 500 acres; and the sewer was intended for the use and benefit of all the lots and grounds, to which such permanent system of regulation extended. But the assessment made for building such sewer, has been made upon a small part only of the houses and lots, and owners of lots, within such district. That *Canal-street*, in which the sewer was to be built, was intended, laid out, and opened, for the purpose of forming a common outlet and passage way for the water from the said district to the *Hudson* river; and that street, and the sewer therein, conjointly, form the place of such outlet for the water, and are both necessary to its accomplishment. That the cost and expense of the ground, forming the street for that purpose, was assessed upon and paid by the owners and occupants of all the houses and lots within the district or section; that the sewer was necessarily made of its present dimensions, at a very great and increased expense, for the very purpose of giving to it a sufficient capacity to receive and carry off the vast quantity of water which must collect from the extensive district the sewer was intended to drain. That common sewers have been made under the direction of the Corporation, at different times, in other parts of the city, where the regulation of the grounds rendered them necessary, and the uniform rule and practice, in such cases, had been, to assess the expense of building the sewer among the owners and occupants of all the houses and lots from whence the water was received into the sewer. That such assessments have been made by persons appointed by the Corporation, who have confirmed such assessments; and that this rule and principle had been applied and acted upon, not only before the assessment in question, but subsequently, in cases which were mentioned, &c. The writ of certiorari *commanded* the Corporation to certify and return the assessment made by the persons above named, the objections in writing thereto, and all the proceedings respecting the same, with all the estimates and assessments of the expense of making the sewer, and all acts and proceedings touching

ALBANY,
January, 1823.

LE ROY
v.
MAYOR, &c.
OF N. YORK.

the same, before the Corporation, or in their possession, custody, or power, &c. ; and all and singular the acts, orders, minutes, reports, process, and proceedings, relating to the forming, laying out, and opening of *Canal-street ;* and all estimates and assessments of the expense of forming and opening that street, or of acquiring the ground for that purpose ; and all minutes, orders, reports, acts, and proceedings, touching the same, before the Corporation, or in their possession, custody, or power ; together with the maps, profiles, documents, and papers, in their possession, custody, or power, designating and describing the district or part of the city from whence, by the permanent and existing regulation thereof, the water runs and is received into the sewer in *Canal-street,* to be conveyed through it to *Hudson* river, with the time when these regulations were adopted and made, and all things required of them by the exigency of the said writ, in the premises, &c., before the Justices, &c.

In *August* term, 1820, *Edwards,* in behalf of the Corporation, moved to quash or supersede the *certiorari,* on the grounds stated in affidavits, which he read : 1. Because, of *laches* in the plaintiffs ; the assessment having been confirmed by the Common Council in *November,* 1819, and no *certiorari* was sued out until *July* following. (6 *Johns. Rep.* 131.) 2. Because, a bill had been filed by the plaintiffs in the Court of Chancery for an injunction, which was refused by the Chancellor, (see 4 *Johns. Ch. Rep.* 352.) from whose decree an appeal had been entered, which was pending. 3. Because, the *certiorari* was irregular, on the face of it, requiring the defendants to return, not only all matters relating to the sewer, but proceedings which took place ten years ago, relative to *Canal-street.* 4. Because, many of the persons assessed had paid to the amount of about 30,000 dollars. He said, that this was an application to the sound discretion of the Court; that a *certiorari* was not a writ of right ; but the Court might quash the writ, if before them, or supersede it, if it was not returned. (2 *Atk.* 318, 319. *Sayre's Rep.* 156. 4 *Term Rep.* 499. 7 *Mod.* 18. 8 *Mod.* 331. *Viner's Abr.* tit. *Certiorari,* B. C. 5 *Term Rep.* 251.) The Corporation were not parties in these proceedings, but judges merely ; and as long as the *commis-*

*sioners* appointed to make the assessment acted within the scope of their authority, their judgment was final and conclusive. The statute left the matter to the judgment and discretion of the commissioners; and where that discretion had been exercised according to the act, no Court of law or equity could properly interfere to overhale their judgment. (1 *Johns. Ch. Rep.* 21. 2 *Comyn's Dig.* 487. *Finch's Rep.* 320. 2 *Atk.* 144.)

*S. Jones*, and *D. B. Ogden*, for the plaintiffs, to show that this Court had a superintending power over these proceedings, and that it ought to be exercised in this case, cited 2 *Caines' Rep.* 179. 15 *Johns. Rep.* 538. 16 *Johns. Rep.* 50. 1 *Lord Raym.* 469. 580. 1 *Salk.* 145. 2 *Term Rep.* 234. 1 *Bac. Abr.* tit. *Certiorari,* (B.) *Styles's Rep.* 13. 3 *Maule & Selw.* 447. *Callis on Sewers,* 112. 223, 224. 151. 161.

*The Court* denied the motion to quash or supersede the writ, with costs, and ordered a return to be made to it. The Corporation, afterwards, made a return to the *certiorari*, but the plaintiffs not deeming it sufficiently full, applied to the Court, on a notice of a motion and affidavits, in *January* term, 1821, for an order upon the defendants to make a new or further return to the writ. This motion was opposed by the counsel for the Corporation, who cited 2 *Johns. Cases,* 108. 2 *Caines' Rep.* 106. 2 *Burr.* 1042. 3 *Maule & Selw.* 447.

VAN NESS, J., delivered the opinion of the Court. The objects of this application, as stated in the *notice* of the plaintiffs, are, 1. That the return on file be taken off the file. 2. That the rule entered to assign errors, be vacated for irregularity. 3. For a rule that the defendants make a further return, in the following particulars : (1) That the defendants set forth, state, and describe the district or section of the city of *New-York*, and the bounds and limits of the said district or section of the said city, from which the water runs, and is received, or, by the permanent or the existing regulation thereof, is to run and be received into the common sewer in *Canal-street*, to be conveyed and carried to the river. (2) That they state the time when such perma-

nent or existing regulation was adopted or made, and the nature and cause thereof, with the maps, profiles, documents, or papers in the possession, custody, power, or control of the defendants, designating, describing, or showing such said district or part of the said city, or such said regulation. (3) That they set forth such matters and facts as they have omitted to return, and which, by the *certiorari*, they are required to return. 4. For the costs of this application. 5. For such other rule or order as the Court shall see fit to grant.

*Sanford's* affidavit, which accompanies the notice, very fully explains the whole case ; and the necessity of compelling the defendants to return all the papers, orders, regulations, and documents in their power or possession, according to the notice, is most apparent; and so the Court thought when they refused, at the last *August* term, to quash the *certiorari*, and ordered a return to be made to it. The whole of the proceedings in relation to *Canal-street*, appeared to us to be one continued operation, from the original laying out of *Canal-street*, building the sewer, and covering it. And it is indispensably necessary, to enable this Court to determine, or settle a principle upon which an assessment of the expense ought to be made, that we should have before us the whole of the proceedings in the possession of the defendants, from the commencement.

It is to be observed, that the plaintiffs do not ask a return of any matter or fact which rests in the knowledge of the individual members of the Common Council ; but of such matters and facts as are contained in written documents in the possession, power, or control of the defendants, as a corporate body, and which are records, or in the nature of records, of the proceedings of the Common Council, in relation to *Canal-street*.

As to the jurisdiction of this Court, in relation to the proceedings in question, I would remark, that that point is not now to be discussed, as we have already disposed of it, in refusing to quash the *certiorari* in *August* term last. We decided, and without hesitation, that this Court had a superintending and supervising power in cases of this description ; and that the papers then submitted to us, entitled the plaintiffs to a *certiorari*, and to such a return thereto, as

would bring the merits of the question fairly before the Court. The whole of the proceedings relative to the original laying out of *Canal-street*, and the various acts, orders, regulations, surveys, &c., were then, and now are exhibited; and we certainly considered them material to be returned. Without them, a case was not made out for our interference. These proceedings, in fact, according to the view we then took of the case, formed the basis of the complaint of the plaintiffs, and furnished the principal ground for the interposition of the superintending powers of this Court. Upon the merits of the question in dispute between the parties, we did not then, nor do we now, express an opinion. We supposed, then, as we still do, that it is a case of which we have undoubted jurisdiction, and that, *prima facie*, enough had been established to direct the proceedings to be brought before us, reserving our opinion upon the merits, when a full and complete return of them shall be made.

The *certiorari* recites, that, in the making of other sewers in the city of *New-York*, a principle of assessment had been adopted, and sanctioned by the Common Council, in conformity with that which the plaintiffs contend ought to have been pursued in this case, and it requires a return of the proceedings in such cases. To this, I am inclined to think, the defendants are not bound to make any return. Whether the Corporation has adopted a wrong principle of assessment in this case, is not to be determined by their practice, even in former analogous cases, but by the law under which they acted. The rule is justly stated by the defendants' counsel, that nothing is to be returned but what can be legally required to be returned, without reference to the command of the *certiorari*.

We, therefore, direct a rule to be entered, that the defendants make a further return to the *certiorari*, as to the first and second points stated in the notice; and that in the mean time, the proceedings on the rule for the plaintiffs to assign errors, be stayed, until twenty days after such further return is made. We give no costs of this application. They must abide the final event.

The defendants, accordingly, made a further return, which being objected to by the plaintiffs as insufficient, the counsel for both parties, to obviate the necessity of any further application to the Court on the subject, agreed to an additional statement, to be annexed to, and taken as part of the return. And in *May* term, 1822, the cause came before the Court, on the returns to the *certiorari* and the proceedings thereon, and upon a *notice* from the plaintiffs to the defendants of an application to the Court, that the estimate and assessment of the expense of making the common sewer in *Canal-street,* mentioned in the return, be set aside, vacated, and annulled, with costs, or that such other order be made, or judgment rendered, by the Court in the premises, as justice might require.

The argument of the cause was commenced in *May* term, but, for want of time, was continued to *August* term last.

*S. Jones,* and *D. B. Ogden,* for the plaintiffs, contended, that the defendants, and the commissioners acting under their direction, had not conformed to the authority and directions of the act, or to the rule of assessment given by it. The 175th section, (2 *N. R. L.* 407.) says, they are " to cause estimates of the expense to be made, and a just and equitable assessment thereof among all the owners or occupants of *all the houses and lots intended to be benefited thereby,* in proportion, as nearly as may be, to the *advantage* which each shall be deemed to acquire." They have no arbitrary discretion on the subject. The law is imperative. The only discretion to be exercised by them is in apportioning the amount of the assessment among the persons intended to be benefited by the improvement. This act, in regard to the powers given to the Corporation, is very similar to the *English* statutes relative to the *Commissioners of Sewers,* in regard to whom, it has been decided, that they are bound to exercise a *legal* discretion, that is, the exercise of given powers. (*Callis on Sewers,* 112, 113. 145. 223, 224. 3 *Maule & Selw.* 447. 2 *Str.* 11. 47. Then, who were the persons intended to be benefited by this common sewer ? Certainly, *all* those from whose grounds the water is carried off to the river, by means of the sewer. They are persons

intended by the Corporation to be benefited, when they directed the improvement to be made, not those intended by the commissioners.

*Edwards,* and *H. Bleecker,* contra, insisted, that the proceedings of the defendants had been, in all respects, in conformity to the act ; and that the Court had no power to vacate or control the proceedings under it, unless they were irregular or fraudulent. The Court cannot take notice of any matter that does not appear in the return to the *certiorari;* nor of any thing which the defendants were not legally bound to return. And if any matters have been improperly returned, or ought not to have been returned, the Court will disregard them. (5 *Term Rep.* 341. 6 *Mod.* 90. 4 *Viner's Abr.* 356. pl. 11. 2 *Salk.* 493. 5 *Mod.* 159. 7 *Johns. Rep.* 23. *Cases temp. Hardw.* 169. 2 *Johns. Cases,* 108.) ·

The office of a writ of *certiorari,* is to remove, or bring up from an inferior jurisdiction, a matter of record, or something in the nature of a record. When it is brought up, this Court do not look into the merits of the case, but merely whether it appears on the face of the proceedings, that the inferior tribunal has exceeded its jurisdiction. They do not interfere with the exercise of any power within the acknowledged jurisdiction of the inferior Court. If the return is false, the party may have an action for a false return, or an action of trespass. (1 *Comyn's Rep.* 80. *Tidd's Pr.* 455. 3 *Maule & Selwyn,* 447. 2 *Bl. Rep.* 717. *March's Rep.* 196. 2 *Caines' Rep.* 182. 4 *Mod.* 66. 165. 1 *Ch. Cas.* 309. 1 *Vesey,* 58. 1 *Vernon,* 58. 1 *Johns. Ch. Rep.* 21. 1 *Sid.* 296. 3 *Atk.* 673. *Skinner,* 480. 14 *Johns. Rep.* 111, 112. 2 *Vernon,* 390. *Prec. in Ch.* 530. *Bull. N. P.* 75. *Peake's Evid.* 294, 295. 4 *Johns. Ch. Rep.* 352.

WOODWORTH, J. delivered the opinion of the Court.

A return having been made to the *certiorari,* directed to the defendants, application is now made to set aside the assessment of the expense of making a common sewer in *Canal-street,* on the ground, that it has not been made in con-

formity with the 175th section of the act relating to the city of *New-York.* (2 *N. R. L.* 407.)

The general superintending power of the Court to award a *certiorari,* not only to inferior Courts, but to persons invested by the legislature with power to decide on the property or rights of the citizen, even in cases where they are authorized by statute finally to hear and determine, has been frequently exercised, is considered as well established by the common law, and can only be taken away by express words. (2 *Caines' Rep.* 182. 8 *Term Rep.* 542.) The question of jurisdiction came up, when the defendants moved to quash the *certiorari.* The Court then decided, that they had a supervisory power in cases of this description. This power will be exercised when the duty to be performed, and the manner of executing it, is clearly pointed out by law, and there shall appear to have been an essential departure from it. On the application for a further return, we considered it indispensably necessary to have before us the whole of the proceedings in the possession of the defendants, to enable the Court to settle a principle, upon which an assessment of the expense ought to be made. On examining the return, it does not contain more than a fair compliance with the rule; it is admitted, that the Court will only notice what can legally be returned, and will reject extraneous matter.

By the 175th section of the act, the Corporation are authorized to cause common sewers to be made, and a just and equitable assessment thereof, among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, nearly as may be, to the advantages which each shall be deemed to acquire. In order to determine on what principles the assessment in the present case ought to be made, it is necessary to look into the various regulations of the Corporation, in relation to improvements in this part of the city, and notice in what manner the inhabitants of the district, whose waters are carried off, are connected together, in respect to such improvements. It appears that there was an original outlet of the water from the grounds comprising the district in question, from time immemorial, a considerable part of which was along the

present route of the common sewer. Had this part of the city remained unimproved, those who owned property in the lower part of the district, must have submitted to the consequences arising from the flow of water, in its course to the natural outlet, and could not have supported a claim for damages sustained, or for contribution, against the owners of lots lying in the upper or higher parts of the district. The present question arises on a very different state of facts. The city of *New York*, within a few years past, has extended rapidly ; a waste and barren territory has be n laid out into streets, which have been paved and drained. Houses have been erected, forming an integral part of the city ; the spirit of improvement is progressing ; acts of the legislature have been passed, from time to time, to enable the Corporation to regulate and conduct the necessary operations incident to such a state of things, and without which, disorder, irregularity, and great public inconvenience, would be the inevitable consequence. Persons owning property, which is to be diverted from its original destination, or applied for the purpose of building up a city, stand in a new relation to each other, arising from new interests, and the necessity of taking a comprehensive view of the whole, in order to legislate wisely and discreetly as to a part. Laws for these purposes are presumed to have been passed with the express or tacit consent of those whose interests may be affected. When improvements are directed, and expenses incurred, which are required by the peculiar situation of a part of a district ; and such improvements are essential to protect a part, from injuries growing out of the change from vacant lots to streets and houses, they ought to be considered as, in some measure, beneficial to all, although not equally so. The quantum of benefit rests in the discretion of the assessors, with which the Court cannot interfere. Who are to be comprehended in an assessment, depends on the principle on which it is made ; that must be determined by a sound construction of the law, applied to the facts. It does not rest in the discretion of those who are to execute the law. The superintending power of this Court is competent to establish the principle, and compel the inferior authority to be governed by it ; leaving to its discretion, the manner of levy-

ALBANY,
January, 1823.

LE ROY
v.
MAYOR, &c.
OF N. YORK.

ing, and the amount of contribution, to be exacted from each individual. It is no answer to this view of the subject, to say, that the waters which are now carried off through the present covered common sewer, were as effectually carried off by the open drain that was previously used. To the inhabitants on the high grounds it may not be material in what manner the water is discharged into the river; but when streets are paved, the water descending on the surface, from the high ground, must necessarily expose those in the valley to inconvenience and injury. It being the common right and duty of all, to cause the water to be conveyed through the streets, so as to occasion as little injury as possible to the inhabitants near it, the expense becomes a common charge on all; from this it results, that owners of lots on the high grounds, are benefited by a sewer rendered indispensably necessary to protect the inhabitants on the low grounds. The benefit thereby is, that those on or near *Canal-street*, are not incommoded or annoyed by the water. This protection to them, is a discharge of the duty previously existing, and obligatory on the whole district, and, consequently, those owning property in the district, and not included in the assessment, are benefited by the sewer.

It appears that the regulations of the city for carrying the water from this district into the river, through *Canal-street*, by making a common sewer, and taking the ground for making *Canal-street*, were made prior to 1809; that this street was laid out and opened for the purpose of making a common outlet and passage way for the water, and as a substitute for the original outlet; that the expense and cost of the ground purchased for forming the street, was assessed upon the owners or occupants of all the houses and lots, from whence it was supposed the water was, by the permanent regulation, to run, and be received into the common sewer, as being benefited thereby. There was an open drain, before 1815, through *Canal-street*, which was designed merely for a temporary purpose, and continued until the covered sewer in question was made. The whole of the proceeding in relation to *Canal-street*, appears to be one continued operation, from the original laying out, building the sewer, and covering it.

The principle of assessment, adopted by the Corporation, in purchasing the ground for *Canal-street*, I consider as applicable to this case, and ought to have been pursued. It is stated, in the return, that the covered sewer was constructed, as well for carrying off the waters, as for correcting the nuisance, which existed during the time the drain or open sewer remained, and which was caused by it; but that it was not necessary for draining off the water. Admitting that the covered sewer became necessary, in order to correct the nuisance, it would not change the principle of assessment. The permanent regulations respecting this district required the purchase of ground and a common sewer. An open drain was used for several years; it was found materially to affect the health and comfort of those whom the water passed, in its passage to the river: to remove this nuisance, the covered sewer was built; the canal was a part of the plan of operations for this section or district, and made for the benefit of all. The whole district were bound to make it as little prejudicial as possible. When found to endanger the health of the inhabitants, it was the duty of all to contribute towards the expense of removing it. The covered sewer was constructed for that purpose. How far the nuisance extended does not appear; its removal may have been beneficial to the whole district; but I do not rest the principle on that ground; it is enough that all were bound to protect, to a reasonable and necessary extent, those who were exposed. When grounds owned by various individuals, become the subject of regulation, in respect to laying out streets, and making improvements, which are considered by the proper authority necessary for carrying into effect the plan adopted ·for a particular district, as a whole, regard must be had to the rights, privileges, and advantages of every part, and all are liable to share in the burthen which may be thrown on a part.

We are clearly of opinion, that by a just construction of the act, the assessment ought to have been made upon all the owners or occupants of houses and lots included within the district, designated on the map, from whence the water flowed into the sewer; and, consequently, that the assessment made ought to be set aside and vacated.

Rule accordingly.