*42 Opinion of
Chief Justice.
Controversies having arisen, between Thomas J. Whitehead, on the one part, and George W. Gray and Samuel H. Gedney, of the other part, they agreed, by an instrument of writing, to submit “all matters in difference between them,” to the arbitrament of three persons mutually selected. The arbitrators made an award. Whitehead being dissatisfied, sued out a writ of certiorari directed to them, requiring them to certify to this court) the “submission and award, and all things touching and concerning the same.” The arbitrators have made return and send, “ the submission and one of the awards, the other award, (being both alike), having been delivered to George W. Gray and Samuel H. Gedney, before receiving the writ.” The exceptions to the award, as stated by the plaintiff in certiorari, in tfie reasons filed, are, that the arbitrators did not act, although requested, oh certain matters contained within the submission; and that they did act on matters, not within the submission, and beyond their powers. .
The case is submitted to us on the return to the certiorari and depositions since taken, and a written argument of the plaintiff’s counsel, no counsel having appeared on the other part.
The question which first presents itself for examination, is whether this court has jurisdiction to issue such a writ, and thus to enquire into the proceedings of the arbitrators ? Whether a certiorari directed to arbitrators who have made and published their award for the purpose' of impeaching and setting aside the award, can, on legal principles, be maintained? The allocatur was signed by the judge, of whom it was asked, with hesitation, from a desire however, not to deprive the complainant of the remedy, if lawful, and under an expectation, the propriety of it would be examined here before the whole court, where it might be more satisfactorily decided.
*There is no precedent of such a certiorari, in this court; in the other states of the Union; or in the English *43 reports, so far as I am able to learn, either from my own researches or from the brief of the plaintiff’s counsel. lienee a very cogent and almost irresistible argument results against the present employment of this writ. So frequent here and elsewhere are arbitrations ; so numerous are awards; so invariably is the losing party dissatisfied; so commonly are the very complaints made which are here urged; so usual is it for the unsuccessful litigant to suppose, and oftentimes most sincerely, that the arbitrators have done too little for him and too much against him; and the common modes of redress against awards are deemed so arduous and straitened, that we may presume, if not conclude, the omission to use the writ of certiorari, is from the conviction of the profession, that it cannot lawfully be done. In The King v. Whitbread, Doug. 549, Lord Mansfield said; “ Though great industry has been employed, no case was produced, in which a certiorari has been granted to remove proceedings before the commissioners of excise. This circumstance alone affords strong ground to suspect that none is grantable.” Industry equally great and commendable has been used here by the plaintiff’s counsel, and with a like unsuccessful result. I am not willing, however, on this argument alone to deny the writ, but choose to seek otherwise to ascertain the bounds of our jurisdiction.
One ground relied on by the plaintiff in support of the writ is, that as the submission contains no agreement for making it a rule of court, and as there is no allegation of corrupt conduct of the arbitrators, he has no other remedy, in a court of equity or in a court of law. “ The only remedy he can adopt, so as to embrace all the objections to the award,” he says, “is by certiorari."
It is true, as the submission may not, for want of an agreement of the parties, be made a rule of court, the complainant cannot seek redress in the same mode as if there had been such an agreement. And if he cannot, let it be remembered lie has voluntarily deprived himself of it. Such a clause is *44 very commonly inserted; and he was wholly at liberty to accede to or refuse an arbitration under this.or any other form. This mode of *adjusting differences is never by compulsion or in invitum. If the award remains unperformed by Whitehead, Gray and Gedney must resort to an action on the submission or the award. In such action, Whitehead may avail himself of certain exceptions against the award, and for others, the Oourt of Equity opens its doors to him. By way of defence in such action or by bill in Chancery, he may urge against the award all such objections as can, on legal principles, be sustained. Whether he can, in either place, enforce the complaints, he here makes, we need not determine. If he may, he has other remedy and is not permitted to invoke the extraordinary jurisdiction of this court by certiorari. If he may not, the law has not provided him redress upon such grounds or does not consider them as sufficient to impeach an award; a mo.de of adjusting controversies to which it compels no one to resort, and upon •which, before any one enters, he should weigh the maxim, Qui sentit eommodum sentiré debet et onus.
The jurisdiction of this court by means of the writ of certiorari, is, in my opinion, correctly and perspicuously laid down in Ludlow v. Executors of Ludlow, 1 South. 389. “ It has the superintendence of all inferior courts both civil and criminal; of all incorporations in the exercise of their corporate powers; and of all public commissioners in the execution of their special authorities, and public trusts. It causes their proceedings to be certified before it, in order that, upon inspection, they may be stayed, affirmed or set aside, as the case may require; and that in many cases before, as well as after judgment.”
The counsel of the plaintiff seeks to give, as it seems to me, an undue extension, unintended by the court, to a subsequent clause of the opinion above referred to, page 392, when he states in his brief that the certiorari is thereby said to lie to “ all tribunals which are called extraordinary *45 and special, in contradistinction to the ordinary and common courts.” The context fully shews that the court here meant no wider range than had been previously expressed. They speak of the use of the writ, “in superintending inferior jurisdictions in the exercise of public powers and authorities, in which the people at large are concerned.” They specify them. “Of this kind of jurisdiction are all tribunals established by law, for the execution of particular public trusts, such as boards of freeholders,” “commissioners appointed to lay out roads and others,” and then add, “ in short, all tribunals which are called extraordinary and special, in contradistinction to the ordinary and common courts established for the trial of criminal offences, and the determination of private right between citizen and citizen.” The next sentence also clearly evinces their meaning. “ The staying or superseding the proceedings of these public functionaries in the execution of their trusts.”
Let us now examine the authorities, on the head of jurisdiction, to which we are referred by the plaintiff’s brief. They consist of general rules and particular instances of the exercise of the writ. Thus we are referred to Bac. Abr. Cert. B. 351, whore the author says, “ the writ lies to remove the proceedings from any inferior court, whether of an ancient or newly created jurisdiction, unless exempted by statute or charter.” But arbitrators were not here intended, nor can they, by any just construction, be included. The same may be said of the doctrine laid down in another place. “ It is a consequence of all inferior jurisdictions erected by parliament to have their proceedings returnable into K. B.” Arbitrators are not what is here meant by inferior jurisdictions. In Rex v. Inhabitants of Glamorgan. 1 Id. Raym. 580, the court recognized a distinction between, an authority and a jurisdiction; for it being objected that this writ would not lie to remove orders made by commissioners of bankrupts, the court said they had only an *46 authority, and not a jurisdiction. The citation made from 1 Lilly Abr. 253, is one of those general remarks which can only be understood by its specifications, and can only be true with its proper qualifications. If broadly, the writ, “lies in all cases where the superior tribunal can administer the' same justice as the court below, and when the inferior jurisdiction do not proceed therein according to the rules of law,” it is manifest this court, may be compelled to assume most of the judicial business of. the state. Can we not administer in all civil actions, in point of jurisdiction at least, the same justice as the Courts of Common Pleas?
The plaintiff’s counsel h'as cited Cases Temp. Hardwicke, 261, to shew that when an act of parliament directs some-thing to be *done, the court will enforce it by mandamus ; and 3 Smith, 388, E. T. 1806, that arbitrators are subject to an order of K. B. in England, under a mandamus, for not coming to an agreement. And he argues that, if incorrectly done, the court .will correct the matter by certiorari in all cases where by mandamus they would order it to be done. This deduction is not sound. In Rex v. Clapham, 1 Wills. 305, a mandamus was issued to the old overseers of the poor to deliver the books of the poor’s rates, to the new overseer. In 3 Burr. 1264, to the trustees of a dissenting meeting house to admit a 'person duly elected, to the use of the pulpit. If the books had been improperly delivered in the one case, or the pulpit improperly opened in the other, no certiorari would have been granted. In Marbury v. Madison, 1 Cranch, 170, the Supreme Court of the United States thought a mandamus to the secretary of the state to deliver a commission or a copy of it from the record, was a proper remedy, although being an exercise of original jurisdiction not warranted by the constitution, they did not issue it. But if the commission had been improperly delivered, by the secretary, can it be supposed they would have deemed a certiorari an apt remedy to correct such error ?
We are also referred to particular cases for the exercise of the writ of certiorari. Groenvelt v. Burwell, 1 Salk. *47 144; The writ was to the censors of the College of Physicians, to whom a power was given by charter, to examine 1 and punish in cases of malpractice, and who had condemned Groenvelt to fine and imprisonment. 3 Mod. 94, 95, Rex v. Plowright; it was held, a certiorari would lie to remove an order of two justices to set aside a distress by the collector of the tax on chimneys, made under an act of parliament, giving to one or more justices, authority to hear and determine in case of dispute. Cro. Jac. 484, Carew’s case and Poph. 144, were applications for certioraries to remove indictments from Wales. In 1 Keble, 818, Hucknel’s case, a certiorari was applied for to remove informations for offences and to enforce penalties, exhibited before commissioners of excise; moreover it was not granted. In 2 Keble, 43, a certiorari was issued to remove the proceedings of the commissioners of fens. What they were, or what was the objection to them, is not stated. But in the same book, 82, Bell v. *Partridge, the court denied a certiorari to the commissioners under the act for draining the Bedford level, and said it was like the commissioners of bankrupts, in which case, if they decree contrary to law, the party has his remedy by action. 2 Keble, 129, was a certiorari to the commissioners of sewers, who have very extensive powers to erect public works and make assessments for then-expenses ; and the object, in this instance, was to remove an order they had made, charging one .’Day alone for the repair of a sea-wall.
It may have been seen, that all these instances of the allowance of the writ, are strictly within the rule laid down by this court; nor does any one bear even a, remote analogy to the case now before us.
The rule in Ludlow v. Executors of Ludlow, is stibstantially the same as that stated by the Supreme Court of New York, in Lawton v. Commissioners of Cambridge, 2 Caines 179; and subsequently recognized in Lynde v. Noble, 20 *48 John., 82, and Le Roy v. Mayor, &c., of New York, 20 John. 438. “The King’s Bench in England (and this court is clothed with the same common law authority), has jurisdiction and may award a certiorari not only to inferior courts, but to persons invested by the legislature with power to decide on the property, or the rights of the citizen, even in cases where they are authorized by statute, finally to hear and determine.” Arbitrators are not meant by “persons invested by the legislature with power to decide.” Nor do the differences pointed out to us between arbitrators here 'and in England', growing out of our statute, which requires them to be sworn or affirmed, and authorizes them to administer oaths and affirmations to witnesses, render them any more a tribunal, or jurisdiction, or inferior court, within the scope of a writ of certiorari, than arbitrators in England-Some provisions designed to render this mode of adjusting disputes more safe, efficient and practically useful, are peculiar to our statute, but the leading principles of arbitration remain unchanged.
An argument of some weight against awarding this writ to arbitrators' is, that they are not bound to make or keep any record or minute of their proceedings; their award, when made, is usually delivered to one or both of the parties ; their functions are then executed and at an end. How is a return to the *writ to be effected? Is the use of the writ to depend on the chance that the arbitrators may not have parted with the award ? Is not the propriety of the writ justly questionable, when those to whom it is to be directed, at all times may be able to say, and in general must say, they have nothing remaining before them ?
The writ of certiorari in this case was, in my opinion, improvidently issued, and ought to be quashed.
Ford; J., and Drake, J., concurred.