THE PEOPLE, *ex rel.* The Erie and Genesee Valley Railroad Company, *vs.* J. NELSON TUBBS and others, Commissioners &c.

Under the common law writ of certiorari, courts have always reviewed and examined the acts, proceedings and determinations of the inferior tribunals or bodies to whom the writ was sent, so far as to see whether they had kept within their powers, or within the law under which they acted, in the matter complained of. *Per* JOHNSON, J.

If they have acted contrary to their powers, altogether, or exceeded them in any material particular, the writ furnishes a sufficient ground for the reversal of their acts or determinations.

No person is authorized to apply to a justice of the Supreme Court, under section 22 of the general railroad act, of 1850, for the appointment of commissioners to examine the proposed route of a railroad and to affirm or alter the same, except one whose lands have not been acquired by the company, and after the service on him of the written notice required by said section to be given by such company. And he must feel aggrieved by the proposed location over or through his land, and set forth his objections to the route designated through his land, in his petition.

The commissioners thus appointed are to examine the proposed route, and hear the parties before deciding; that is, the parties to the proceeding—the petitioner on the one side, and the company on the other—and the decision must be confined to the rights of the parties heard, and consistent with the rights of the public.

It would be monstrous to hold that one landholder upon a route could, upon this hearing, force a different location, not only over his own land, but the lands of all his neighbors, who had had no opportunity of being heard in regard to it. The statute contemplates nothing of the kind, and was never intended to give, and does not give, any such power to the commissioners. *Per* JOHNSON, J.

This proceeding was designed not to put it in the power of a few individuals to obstruct and defeat the construction of railroads, but to give a remedy to a landholder who might sustain some extraordinary or peculiar injury from the proposed location, not common to other lands through which the proposed route lay, which could not be adequately compensated in damages, and which might be prevented and avoided by a change, upon the land, consistently with the just rights of both parties and of the public. *Per* JOHNSON, J.

Where it appeared, upon certiorari, that commissioners appointed under section 22 of the general railroad act had exceeded, and gone far beyond, the scope of their powers; had undertaken to canvass, and sit in judgment upon, the duties and obligations of the railroad company, under its charter, in locating its road generally, and in its choice of routes; and the testimony

The People *v.* Tubbs.

in respect to the injury to the petitioners and their lands was of the slightest and most frivolous character; and from the evidence before the commissioners, and the map by them returned, of both routes and of the entire premises, it was impossible to discover any benefit which could accrue to the petitioners, by the new location, over the one proposed by the company; and it appeared clear, upon the whole case, that considerations quite different from those of injury to the petitioners' lands and the hope of ameliorating such injury, influenced and governed the actions of the commissioners, the direction and determination of the commissions, changing the proposed route. of the railroad, was reversed, and held for naught.

A copy of the petition for appointment of commissioners, under the 22d section of the general railroad act, should be served upon the railroad company, as a part of the notice of hearing before the commissioners, so that the company may be advised of what it is to meet.

The statute provides, in terms, for a hearing before the commissioners, after they shall have been appointed, of the *parties*, which of course includes the railroad company as one of the principal parties to the proceeding.

THIS case is a writ of *certiorari* sued out upon affidavit of the relator's attorney, to review the proceedings of the respondents as commissioners appointed, pursuant to the 22d section of the general railroad act of the State of New York, passed April 2, 1850, by Justice E. DARWIN SMITH, upon the petitions of William Hartman and George Hartman, land owners.-

The section of the statute above referred to is as follows: "Every company formed under this act, before constructing any part of their road into or through any county named in their articles of association, shall make a map and profile of the route intended to be adopted by such company in said county, which shall be certified by the president and engineer of the company, or a majority of the directors, and filed in the office of the clerk of the county in which the road is to be made. The company shall give written notice to all actual occupants of the land over which the route of the road is so designated, and which has not been purchased by or given to the company, of the route so designated. Any party feeling aggrieved by the proposed location, may, within fifteen days after receiving written notice as aforesaid, apply to a justice of

the Supreme Court, out of court, by petition, duly verified,
setting forth his objections to the route designated; and
the said justice may, if he considers sufficient cause there-
for to exist, appoint three disinterested persons, one of
whom must be a practical engineer, commissioners to ex-
amine the proposed route, and after hearing the parties,
to affirm or alter the same, as may be consistent with the
just rights of all parties and the public; but no alteration
of the route shall be made, except by the concurrence of
the commissioner who is a practical civil engineer. The de-
termination of the commissioners shall, within thirty days
after their appointment, be made and certified by them,
and the certificate filed in the office of the county clerk,"
&c. *(Laws of* 1850, *ch.* 140.)

The facts disclosed by the affidavit upon which the
*certiorari* was allowed, and the return of the commissioners,
were as follows: On the 13th of May, 1870, notice was
served upon the petitioners, pursuant to the 22d section of
the above mentioned act, describing the lands of the peti-
tioners, proposed to be taken for the purpose of the road.
On the 26th day of May, the petitions of Wm. Hartman
and Geo. Hartman were presented to Justice SMITH, who
made an order appointing the respondents commissioners
under the said 22d section. On the 10th of June, 1870,
notices were served on the treasurer and attorney of the
railroad company, of the meeting of the commissioners on
the 15th of June. On that day, two of the commissioners,
only, attending, the proceedings were postponed until the
16th, when, all the commissioners being present, they pro-
ceeded to examine the proposed line of the road, and then
further postponed the proceedings to the 20th of June, at
2 o'clock, P. M. Such postponement, the commissioners
return, was upon their own motion, for the purpose, as
stated in their original return, of "procuring the map of
the company on file, and the attendance of the engineer
who surveyed and laid out the road," and for the additional

purpose, as appears in their amended return, "to give the parties desiring to be heard further time to prepare their testimony." On the 20th the commissioners met and proceeded to take testimony, not only on the subject of the location of the road across the lands of the petitioners, but upon the subject of its general location. They determined to alter the route adopted by the company across the lands of the Hartmans, in the manner indicated on a map attached to their report. On the 21st the commissioners made their report, which was filed in the Livingston county clerk's office on the 24th day of June, 1870. Copies of these petitions were never served upon the railroad company or any of the parties interested.

*John A. Van Derlip,* for the relator.

*S. D. Faulkner,* for the respondents.

*By the Court,* JOHNSON, J. This is a common law *certiorari,* to review the proceedings and determination of the respondents as commissioners, appointed on the petitions of certain persons, to examine the proposed route of the relators' railroad, under section 22 of the act of the legislature of 1850, "to authorize the formation of railroad corporations, and to regulate the same." (*Sess. Laws of 1850, ch.* 140.)

Under this writ courts have always reviewed and examined the acts, proceedings and determinations of the inferior tribunals or bodies to whom the writ was sent, so far as to see whether they had kept within their powers, or within the law under which they acted, in the matter complained of. (*Le Roy* v. *Mayor &c. of New York,* 20 *John.* 430. *The People* v. *Board of Assessors, &c.,* 39 *N. Y.* 81.) If they have acted contrary to their powers altogether, or exceeded them in any material particular, it furnishes a sufficient ground for the reversal of their acts

or determinations. It becomes necessary, therefore, to examine the statute under which the respondents were appointed, for the purpose of ascertaining what powers they possessed by virtue of their appointment. By section 22 of the statute before referred to, every company formed under it is required, before constructing any part of their road, into or through any county named in their articles of association, to make a map and profile of the route intended to be adopted in such county, and file it in the office of the clerk of such county. It is then required to give written notice " to all actual occupants of the land over which the route of the road is so designated, and which has not been purchased by, or given to, the company, of the route so designated." The statute, it will be seen, contemplates, and inferentially authorizes, the company to acquire, by gift or purchase, the lands for its proposed route, to any extent, before giving notice to the occupants of the lands which have not been so acquired. If it can do so, it may acquire the title to lands for the entire route, except one parcel, and then give notice to the occupant of that parcel. The section then provides that " any party feeling aggrieved by the proposed location may, within fifteen days *after receiving written notice,* as aforesaid," apply by petition, setting forth his objections to the route designated, to a justice of the Supreme Court, out of court, and such justice may, if he consider sufficient cause therefor to exist, appoint three disinterested persons to examine the proposed route.

It thus appears that no person is authorized to make the application except one whose lands have not been acquired by the company, and after the service on him of the written notice provided for. He must feel aggrieved by the proposed location over or through his land, and set forth his objections to the route designated through his lands, in his petition. I have assumed that the grievance and objections must relate to the route over the lands of

the party making the application, because such is clearly the spirit and intention of the whole section. This will be enlarged upon and more fully stated hereafter.

The commissioners thus appointed are then authorized and empowered " to examine the proposed route, and after hearing the parties, to affirm or alter the same, as may be consistent with the just rights of all the parties, and the public." The question here arises, how extensive an examination of the proposed route, and change of the same, these commissioners can make under this power. Must the change they make be confined to the land of the aggrieved party, at whose instance they have been appointed, or may it extend through the entire route of the road, from one end to the other; or through the entire county in which the lands of the petitioner lie, over lands whose owners are satisfied with the proposed location on their lands, and prefer it to any other, and away from the lands which the company has already acquired on the route proposed? It would seem that it could only be necessary to propound such a question, to suggest an undoubting and conclusive answer in the negative. They are to examine the proposed route and *hear the parties*, before deciding. What parties? Clearly the parties to the proceeding— the petitioner on the one side, and the company on the other; and the decision must be confined to the rights of the parties heard, and consistent with the rights of the public. It would be monstrous to hold that one landholder upon a route could, upon his hearing, force a different location, not only over his own land, but the lands of all his neighbors, who had had no opportunity of being heard in regard to it. It is entirely clear that the statute contemplates nothing of the kind, and was never intended to give, and does not give, any such power to the commissioners. If the construction contended for on the part of the respondents were to prevail, no railroad could ever be constructed, against a factious and determined opposition.

This proceeding was obviously designed not to put it in the power of a few individuals to obstruct and defeat the construction of railroads, but to give a remedy to a land-holder who might sustain some extraordinary or peculiar injury from the proposed location, not common to other lands through which the proposed route lay, which could not be adequately compensated in damages, and which might be prevented and avoided by a change upon the land, consistently with the just rights of both parties, and of the public. No such grievance is set forth in the petitions on which the order appointing the commissioners in this case was granted.

Looking at the matter in the light of these proceedings, it is quite apparent that the judge who made the order ought not to have been satisfied that sufficient cause existed therefor. It is quite safe, I think, to assume that could he have foreseen that the commissioners so appointed would claim and undertake to exercise the powers and functions attempted to be exercised by them, no such order would ever have been granted. That the commissioners, by their action and determination, have greatly exceeded the powers conferred upon them by the statute, and the order appointing them cannot, I think, be seriously doubted or questioned.

This will be rendered quite apparent by an examination of the proceedings before them, as they appear in the return to the writ. There was no hearing of the parties to the proceeding, (which were the petitioners on the one side, and the company on the other,) before the commissioners. The company, claiming and assuming that no such notice as it was entitled to, of the proposed hearing before the commissioners, had been given, refused to appear, or to have anything to do with the hearing or proceedings, and did not appear. But in order, as it would seem, that the petitioners might not go undefended, and without an adversary, a third person, not a party to

the proceeding in any way, but the owner and occupant of lands adjoining the lands of one of the petitioners, upon whose lands the company had located its depot grounds, and who had agreed with the company for said location, and the location of the route of the road through his premises, was permitted to appear as a volunteer antagonist to the petitioners. An issue was improvised for the occasion, between these parties, not relating to any matter set forth in the petition, but to the propriety and justice of the proposed route and location of the road through the lands of this volunteer opponent, and still further south, through the village of Dansville, as it respected the interests of the company and the duties it owed to its stockholders generally. This issue, which appears to have been in a great degree personal, and to have been characterized by much asperity of feeling—at least between the witnesses—the commissioners proceeded to try and determine. On the part of the petitioners, the former engineer of the company, who had recently been discharged from its service, was called to prove that he had advised the company to locate on a route further to the west, which would pass through Jefferson street in the village of Dansville, and which would intersect the present proposed route about two miles south of said village; and that the road could be constructed on that route at least $30,000 cheaper than on the route proposed. On the other side, several of the directors of the company and other witnessess were called to prove that the present proposed location was chosen by the directors of the company, under and in pursuance of the advice of this engineer; as the cheaper and more feasible route. This testimony on the part of the petitioners was objected to by the contestant, on the ground that the commissioners had no authority to try any such question; but the objection was overruled and the testimony received. This issue appears to have been decided in favor of the petitioners and the engineer, and adversely to the con-

The People *v.* Tubbs.

testant. That it was determined, and entered into the conclusion arrived at, appears plainly from the order made by the commissioners. In this order they say: "The commissioners further certify, that it appears from the evidence taken by them, that the location of said road through the premises of William and George Hartman is not the best route to enable the company to comply with the undertakings cont~i~ed in their articles of association; neither the best location as affecting the interests of the petitioners or the public." They then proceed to rectify what they regarded as the delinquencies of the company in respect of their undertakings in the articles of association; and instead of affirming or altering the route over the petitioners' premises, as authorized by statute, break up the proposed route altogether, and destroy its continuity, and survey and locate a new route entirely, through the entire premises of two of the petitioners, and affirm the proposed location of the company over the lands of the third petitioner. This new location by the commissioners is not connected with the proposed route of the company, either over the lands of the petitioners, or at either end. It leaves a gap between the location of the company on the adjoining lands at the north end, of about one hundred feet, and at the south end, of five or six hundred feet.

The commissioners have left it to the company to change its route and get to their location as best it may. It was evidently not the design of the commissioners in making their new location, that it should be connected at the south end with the location adopted by the company on the lands adjoining, but that the line should be extended by the company on the other route through Jefferson street in the village of Dansville, which the company had not selected, but which the commissioners think it ought to have selected in order "to comply with the undertakings contained in their articles of association." What new

difficulties the company might encounter should it under-
take to change its present proposed route, to the westerly
or Jefferson street route thus favored by the commission-
ers, or what new commissioners, with views adverse to
the views of these commissioners, it might be called upon
to contend with, is quite foreign to the present inquiry.
These considerations, however, are quite suggestive, on
the question of the true construction of the statute. It
is enough for the present purpose that the commissioners
have exceeded, and gone far beyond, the scope of their
powers.    They have undertaken to canvass, and sit in
judgment upon, the duties and obligations of the com-
pany under its charter in locating its road generally, and
its choice of routes away from the lands of the petitioners.
Indeed, that subject was almost the only topic on which
they heard evidence.    The testimony in respect to the
injury to the petitioners and their lands, is by one of
them only, and is of the slightest and most frivolous char-
acter.    All the complaint he makes is, that the route pro-
posed "runs parallel to with Main street and cuts two lots
nearly in the center, leaving about thirty rods on each
side inconvenient to water."    The same facts, substan-
tially, were admitted to exist in respect to the lands of
the other petitioner, over whose lands the commissioners
located the new route.    It is quite obvious that the injury
to the lands of the petitioners, and a remedy for that by a
change of the proposed route, formed quite an insignif-
icant item for consideration in the minds of the commis-
sioners.    And in examining the testimony before the
commissioners, and the map by them returned, of both
locations and of the entire premises, it is quite impossible
to discover any benefit or advantage which can accrue to
the petitioners by the new location, over the one proposed
by the company.    The inconvenience in regard to water
is in no respect obviated by the new location, and the
fields appear to be cut and left in a more irregular and in-

convenient shape by the change. In regard to buildings, there was no dangerous proximity of the old route, considered with reference to what is quite usual and common in such cases. In fact, in that regard, there is very little advantage in the new location over the old. The commissioners in their return, state that the route proposed by the company passed through the orchard on the farm of the petitioner William Hartman. Nothing of this kind appears in the testimony before the commissioners, nor on the map, and the return does not show what portion of the orchard is so passed through, nor how many trees would be destroyed thereby. But an injury of that kind could readily and fully be compensated in the award of damages.

In short, it is quite certain, upon the whole case, that considerations quite different from those of injury to the petitioners' lands, and a change to obviate or ameliorate such injury, influenced and governed the action of the commissioners. So far as a legitimate exercise of the powers confided to them is involved, they might just as well have made the new location at right angles with that proposed by the company, and thus compel it to change its entire route from one terminus to the other, in order to connect with the new location. The stretch of power would have been somewhat more glaring and conspicuous in that case, but none the less real and certain.

On the question of notice to the relator of the hearing before the commissioners, I am of the opinion that a copy of the petition should have been served, as part of the notice, and that such should be the practice established in such cases. A majority of this court has already held in this proceeding, that the land holder feeling aggrieved by the proposed location may apply and have commissioners appointed *ex parte*, upon his petition, without notice to any one. The statute, as we then thought, contemplated a proceeding somewhat summary in its character. But

the statute provides, in terms, for a hearing before the commissioners after they shall have been appointed, of the parties, which of course includes the company, as one of the principal parties to the proceeding.

The hearing is to be upon the matters set forth in the petition, and it would be quite improper and unjust to compel the company to come to the hearing without being furnished in any way, with the allegations of grievance set forth in the petition, in time to make preparation to meet them in the usual way. It is no answer to say that the company might have obtained the petitions by a proper application or by diligent search. It was the duty of the party prosecuting the proceeding to furnish it as a part of his notice, so that his adversary might be advised of what he was to meet. This is consistent with the just rights of all parties, and those rights can never be secured and preserved in safety in any other way.

For the foregoing reasons, I am of the opinion that the direction and determination of the commissioners, changing the route of the company, in the manner set forth in their order and decision, should be reversed and held for nought, but without costs.

[Fourth Department, General Term, at Rochester, March 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]