NEW YORK,
May, 1835.

Patchin
v.
Mayor &c.
of Brooklyn.

---

## PATCHIN vs. THE MAYOR, &c. OF BROOKLYN.

A *certiorari* to a subordinate tribunal operates as a *stay of proceedings* from the time of its *service*, unless the judgment or order complained of has *been begun to be executed.*

All proceedings, except as above, by or under the authority of the tribunal to which the *certiorari* issues, are *coram non judice* and void; and the actors therein will be brought up by *attachment* for contempt of the court from which the process issues.

An *attachment* will not however be awarded, where the party obtaining the *certiorari* asked not only for the writ, but also for *a stay of proceedings,* and the latter part of his motion was *denied ;* the granting of the *certiorari,* accompanied with a denial of a stay, is an intimation to the parties concerned that further proceedings on their part will not be viewed as had *in contempt of the court.*

Whether, however, such proceedings will not subject the parties to an action of *trespass* notwithstanding the refusal of an order to stay, *quere.*

Where, from the facts presented on the application for a *certiorari,* the court entertains serious doubts as to the correctness of the procedings sought to be reviewed, they will grant the writ *absolutely ;* but where a *decision of this court* acting as commissioners is sought to be reviewed, and no such doubts exist, the court will, on the application of a party conceiving himself aggrieved, allow the *certiorari,* annexing however the

NEW YORK,
May, 1835.

Patchin
v.
Mayor, &c.
of Brooklyn.

*condition* that such writ shall *not operate as a stay*, so that the opposite party shall not be delayed, *if by leave of the court* he may proceed.

If, after the allowance of the *certiorari*, the power of the court to permit proceedings should be denied, the writ would be quashed as having issued *quia improvide.*

Whether the acceptance of the writ with the condition annexed is not a waiver of any objection to the condition, *quere.*

This court, *on application* for *confirmation* of a report of commissioners of estimate in the laying out of a street in *Brooklyn*, cannot pass upon the questions of *jurisdiction* of the court appointing the commissioners, or upon the *regularity* of the incipient proceedings; they can be reviewed only upon *certiorari* directed to such court.

THIS was a motion for an *attachment* against several individuals, members of the common council of Brooklyn, and officers acting by their authority, for *contempt of this court*, as alleged, in proceeding to open a street in that city after the service of a *certiorari*, which, it was contended on the part of the plaintiff in that writ, operated *per se* as a stay of the proceedings under which the corporation claimed the right to open the street. The *certiorari* was allowed *by* this court, directed *to* the justices of this court, acting as commissioners in confirming the report of commissioners of estimate and assessment, made in reference to the opening of a street in Brooklyn. After the allowance of the *certiorari*, the corporation of Brooklyn suspended proceedings for several months, and then passed a resolution directing one of their officers to proceed and open the street, who accordingly prostrated the fences enclosing a lot belonging to the plaintiff, and gave notice that he intended to remove the house of the plaintiff occupying a portion of the ground over which the street was laid. The plaintiff thereupon applied for an attachment. The peculiar circumstances of the case are adverted to in the following opinion.

*By the Court*, SAVAGE, Ch. J. The first question is whether the delivery of the certiorari was a *stay of proceedings*. It is said in *Bacon's Abr. tit. Certiorari, G., that it is clearly* settled, that after a certiorari is allowed (i. e. *received*) by the court below, all subsequent proceedings on the record are erroneous. So in *Comyn's Dig. tit, Certiorari, E.:* If a certiorari be delivered to a justice of the peace, or other justice to

whom it is directed, it shall be a supersedeas, and every proceeding afterwards is a contempt. Both cite the same cases. *The Queen* v. *Nash*, 1 *Salk.* 147, was a conviction for deer stealing. A warrant had issued to a constable to levy a fine, and the levy had been made. In this state of the proceeding, a certiorari was served to remove the record. It was held that the certiorari did not stay the process, in the hands of the constable, any more than a writ of error would stay execution in the hands of the sheriff, which he had begun to execute. So in *Cross* v. *Smith*, 12 *Mod.*, it was held that a certiorari was a supersedeas in the same manner as a *habeas corpus;* that all subsequent proceedings are erroneous, and an attachment lies for disobedience; and also that the certiorari removes all things pending at the time between the teste and return. The same point is found in the same case of *Reg* v. *Nash*, in 2 *Ld. Raym.* 989, and in *Cross* v. *Smith*, 12 *Mod.* An attachment was issued against commissioners of sewers, who proceeded to fine a person after a certiorari delivered, and they were fined £5 a piece. 1 *Mod.* 44. So a writ of error was considered a supersedeas to the issuing an execution—but that the supersedeas had been removed by statute, unless security be given. 7 *Mod.* 121. We have the authority of Lord Kenyon to the same point, that the court of quarter sessions were bound to obey a certiorari to remove an indictment, and that all subsequent proceedings were void. 1 *East*, 302. So proceedings after *habeas corpus* is error, and *coram non judice*. *Cro. Car.* 261. But where an execution is begun to be executed before the service of the writ, the sheriff shall finish it, and the court below may award a *venditioni exponas* for that purpose. *Cro. Eliz.* 597,. 8 *See.* 1 *Tidd*, 337. This point was so decided in this court in *Blanchard* v. *Myers*, 9 *Johns R.* 66. The court say that a certiorari allowed after execution began, to be executed by the constable, is no supersedeas to it, citing *Willes*, 271; and the same doctrine has been held more recently. 1 *Cowen*, 21.

The case of *Case* v. *Shepherd*, 2 *Johns. Cas.* 27, is the first in our reports, where the question appears to have arisen in this court, as to the effect of a *certiorari* as a supersedeas to the powers of the court to which it is directed. The defend-

ant, who was a justice of the peace, proceeded to try an indict- ment for a forcible entry and detainer after a certiorari had been served upon him, and issued his warrant for restitution, by which the plaintiff, Case, was dispossessed. He sued the justice, and recovered. On a motion for a new trial, the court said, " There can be no doubt that the delivery of the certiorari to the justice superceded his powers, and rendered all subsequent proceedings before him *coram non judice*, and void." In the case of *Wolfe* v. *Horton*, 3 *Caines*, 86, the court take a distinction between a *certiorari* and a *habeas corpus*; the first removes the record itself in contemplation of law, the latter only requires a history of the cause. In the eye of the law, the return to a certiorari or writ of error is regarded as the record itself. In point of fact, only a transcript or copy is sent; but in both cases, after the service of the writ, the powers of the court are suspended. This is the general rule ; but in both if an execution has been issued and levied, it is not suspended. If no execution has been issued before the service of the writ, none can issue until judgment of affirmance. It has been held, however, that the court below, notwithstanding the writ of error, have power to allow amendments.

There can be no doubt, therefore, that the service of the certiorari, unaccompanied by any qualification, would have suspended the powers of the commissioners to whom it was directed, and also of the corporation. Their subsequent acts, by way of resolution to proceed, would have been a contempt; and their proceeding, by their agents, to prostrate the fences of Patchin, for the purpose of opening the street, would have been not only a contempt, but a trespass. Whether, under existing circumstances, they are trespassers or not, is a question which I do not intend to discuss or decide ; but whether they have been guilty of a contempt, is the very point now to be decided. If the defendants have been guilty of any contempt, it is towards this court, and they are to be punished for it by fine and imprisonment ; but this is not a case where an attachment can be used as a civil remedy by the plaintiff in the certiorari. His remedy, if any, is by action ; he is no farther concerned in the question of contempt, than as it in-

volves the question whether the defendants had a right to proceed. The rule in this case allowing the certiorari is different from the common form. The plaintiff's motion was double; 1. for a certiorari, and 2. for a stay of proceedings. The first was granted, and the second denied. The effect of this, so far as the court are concerned, was to direct the tribunal below to send up their proceedings for review; but an intimation is clearly given, that if further proceedings should be taken, they would not be considered in contempt of the authority of this court. Such was in fact the intention of the court; and this, perhaps, requires explanation. The certiorari in this case, is directed by this court, *as a court,* to the justices of the same court, *as commissioners.* Being perfectly satisfied that there cannot be any ground for a diversity of opinion, among those who are not interested, as to the correctness of the decision made by us as commissioners, but wishing to give every suitor an opportunity to review our decisions, when he desires to do so, we, on that ground, and that alone, allowed the certiorari. When the court entertain serious doubts as to the correctness of the decision sought to be reviewed, it is fit and proper that no further proceedings be taken under that decision, until its correctness is ascertained; but when no such doubts exist, the court applied to, to allow a certiorari, *should,* as a general rule, refuse the certiorari; but when the decisions of the same court are sought to be reviewed, and that review can be had in no other manner than by means of the certiorari, it will be seen that motives of delicacy forbid the refusal of the writ; and justice to the party concerned, required that he shall not be delayed by any act of the court, if by leave of the court he may proceed. The intention of the court therefore was, that the plaintiff in error should have an opportunity to review our decision, and the defendants in error might proceed, if they should be so devised, with a full knowledge that if our decision should be reversed, they will be liable then, if not before, to be treated as trespassers. The defendants, acting under this implied license from the court, are surely not in contempt in regard to the court.

In my apprehension, no injustice is or can be done to the plaintiff. His property is deemed, by the authorities of Brook-

lyn, essential to the accomodation of the public; they have appropriated *it to public use, are willing to make just compen*sation, and for that purpose an assessment has been made; which assessment has been duly confirmed, unless we have erred in supposing that, in passing upon the justice of the assessment; we were not bound to look into the proceedings of the court who appointed the commissioners of estimate and assessment, and to do so as commissioners, not as a court. The powers conferred on us as commissioners are to confirm the report, if no sufficient reason to the contrary shall appear; and those reasons, by the statute itself, can be no others than those submitted to the commissioners of estimate and assessment, by way of objection in writing or affidavits. Those objections, supported by affidavits, must be made to the report itself, not to the anterior proceedings of the court. The only question before the commissioners of estimate and assessment was whether their report ought not to be altered, *Statutes of 1833, p.* 503, § 7; not whether it should be set aside as irregular, and unauthorized not whether they had a right to sit in review upon the proceedings of the court of common pleas; nor whether those proceedings, anterior to their appointment, had been conducted in violation of the constitution of the United States, or of this state. Those are questions to be determined by some court; not by any set of commissioners of estimate, whether those commissioners are respectable citizens of Brooklyn, or justices of the supreme court. Their duty was to enquire whether the assessments were equal and just, and whether their own proceedings had been regular; that was their whole duty, and their whole power as commissioners extended no further. The commissioners of estimate, appointed by the common pleas, when reconsidering their report, could no more inquire whether the court had proceeded regularly in making their appointment, than we could whether the legislature had proceeded regularly in appointing us to revise their assessment; it was sufficient for them, upon that occasion, to know that the court, upon a given state of facts, had power to make the appointment, and that the appointment had been actually made. If they could at any time deny the authority of the court to appoint them, that should

NEW YORK,
May, 1835.

Patchin
v.
Mayor, &c.
of Brooklyn.

have been done at another time, and in a different manner. Nor could we inquire, on that occasion, nor in that way, whether the common pleas had jurisdiction of the matter; as a court, we have power to examine that question, when a record of the proceedings of that court shall be brought before us upon certiorari; but not upon affidavits presented to the commissioners of estimate. The appointment of those commissioners was a judicial act, which is conclusive upon us as commissioners; and in all collateral matters as a court, until it shall be reversed upon certiorari. When that court shall make a return to a certiorari, for the purpose of reviewing their proceedings, they may present a different state of facts from that contained in the affidavits upon which the commissioners were requested to reverse their proceedings. At any rate, it is by their return that their proceedings are to be tested; and whether the facts be the same, or different, they must be before us in the shape of a return, before we can act, in affirming or reversing those proceedings. I have said no injustice can be done to the plaintiff. If the court for the correction of errors shall affirm our decision, when the cause goes there, then he will receive the amount assessed in his favor; if he shall succeed in reversing our decision, then by his action of trespass he will recover whatever he can prove to be the value of the property. Under this view of the case, when a certiorari was asked for, this court had this alternative presented; if the certiorari was refused, the plaintiff in error would be deprived of an opportunity, and which in most cases is considered a right, of reviewing in the court of *dernier* resort a decision made by ourselves; if we allowed the certiorari in general terms, we would stop this improvement in Brooklyn, and leave an important street blocked up by the obstinacy of a single individual, until this grave question should be called, upon our own callendar, some 12 or 18 months after the joining of the issue and until our decision should be reviewed in the court for the correction of errors, some 12 or perhaps 18 months more. We therefore determined to allow the certiorari for the purpose of review, and to allow the defendants in error to proceed if they thought proper.

It has already been remarked, that a certiorari has a twofold operation : 1. To remove the record for the purpose of review ; 2. To stay the proceedings in the tribunal from which the record has been removed, and to suspend its powers. Whether this court, possessing the power to give or refuse the whole effect of the writ, has power to allow it for one purpose only, is a question which I do not intend to discuss. Nor do I mean to discuss the question *where* the cause is, after service of the certiorari and before the return ; nor whether this court, after it obtains possession of the cause, can control the parties, and relax the operation of the writ of certiorari ; nor whether the plaintiff, by proceeding upon the conditional allowance, has not adopted it, and thereby virtually stipulated that the defendants may proceed. These are questions which are not necessarily before me, and further than that it must be apparent, that, having given liberty to the defendants to proceed, they have been guilty of *no contempt towards us.* If we had no power to give such liberty, then the plaintiff may bring his action of trespass immediately. If, however, it is insisted that we had no right to permit proceedings, when the certiorari was allowed merely from courtesy, then, in my opinion, it will be the duty of this court, upon a motion for that purpose, to quash the certiorari as having been unadvisedly allowed.

NEW YORK,
May, 1835

Patchin
v.
Mayor, &c.
of Brooklyn.

Motion denied.