*Ex parte* The MAYOR, &c. of ALBANY.

Where a municipal corporation in the improvement of the streets of a city, act within the scope of the authority conferred upon them by a statute law of the state, and comply with the forms of the statute, their proceedings will not be reversed upon *certiorari.*

It is no objection that in conducting the proceedings, they do not conform to by-laws established by themselves to carry into effect the powers conferred upon them.

Where the laws of the state authorize improvements, and require an assessment of the expense thereof on all houses and lots benefited in proportion to the advantage which each shall be deemed to have acquired, the assessment upon the owner of the lot is not limited to the expense incurred *in front of his particular lot,* but may be extended to his *proportion of the whole expense;* and whilst the assessors act upon *persons* and a *subject matter* within their jurisdiction, the proceedings will not be reversed upon *certiorari;* although the assessors may have erred in the discharge of their duties.

*It seems,* that where a party means to examine into collateral facts, (not appearing in the record of the proceedings,) for the purpose of showing a *want of jurisdiction,* he cannot be relieved by *certiorari,* but must resort to his action ; how far such action will be available, *quere.*

A *certiorari* should name the parties aggrieved, and set forth the cause of complaint.

The allowance of a *certiorari* in cases of this kind rests in the discretion of the court, even where error has intervened.

The office of a *common law certiorari* discussed ; and cases upon the subject cited and commented upon.

THIS was a *certiorari* directed to " The mayor, aldermen and commonalty of the city of Albany, and to Charles S. Olmsted, Sylvester Rathbone, William Thorburn, Stephen T. Thorne and James McCabe, members of the common council of said city, composing the committee appointed by said mayor, aldermen and commonalty in common council [ *278 ] *convened, to whom the assessment and remonstrance thereto in the matter of *repitching and repaving North-Market street* above Lumber-street, was referred." The corporation made a return to the

*certiorari*, the substance of which is referred to in the *opinion* delivered in this case by Mr. *Justice* COWEN. The individuals to whom also the writ was directed made no return whatever. The case was submitted by the counsel for the parties suing out the writ, and by the counsel for the corporation on written arguments, the points of which sufficiently appear in the opinion of the court.

*S. Stevens*, for the relators.

*W. Parmalee*, for the corporation.

*By the Court*, COWEN, J. The only departure complained of from the duty prescribed by any state law, is sought for in the return, that the corporation have no papers before them by which they can ascertain whether any drains were laid in the course of improvement; nor what was the expense of such drains, nor whether it was included in the assessment.

They claim to have proceeded according to the statute of April 5th, 1828, *Sess. Laws, p.* 180, *ch.* 164, to combine the several acts relating to the city of Albany into one. By section 4, *p.* 181, the mayor, aldermen and commonalty have power to order and direct the reducing, filling, levelling, pitching, paving, macadamizing or covering with broken stone, gravel or sand, any of the streets or roads in the city, or the altering, repaving or repairing of the same, or to order and direct the making, repairing or cleansing of the common sewers, vaults or drains, &c. The section requires, that the same shall be completed under the direction of the mayor, &c. within such time as they shall deem proper. And, on the completion of any of the improvements aforesaid, it shall be the duty of the mayor, &c. to cause an account of and for such expenses as may have been incurred for any of the improvements above specified *to be made by the [ *279 ] city superintendent, or by such other person or persons as may be appointed by the mayor, &c. Which said account shall embrace the whole expense for work, labor, service and materials found; and when thus made out, the amount, &c. shall be apportioned by the superintendent, or by such disinterested person or persons, not exceeding three, to be appointed by the mayor, &c. *among all the houses and lots intended to be benefitted, &c. in proportion to the advantage, which each shall be deemed to acquire :* specifying in such apportionment the name or names of the owners, occupant or occupants of the houses and lots intended to be benefitted, as far as the nature of the case will admit; and this apportionment shall be returned to the mayor, &c. who are to advertise, and if no cause be shown against confirmation, they are to approve it. Then it is to be filed with the clerk of the common council, and be binding and conclusive on the owner or owners, &c.

The repairs in question were done on a portion of North Market street.

The broad terms of the writ have swept the office of the corporation clean of every paper relating to the repairs : from which it is plain that the power conferred, and the forms prescribed by the state law, have been in all respects pursued.   An estimate of the expense was made out by commissioners ; but the items of expense, or what it was incurred for in particular, were not furnished to the common council ; nor need they have been.   They remain with the commissioners.   Yet the common council have returned a long schedule of vouchers ; which show *pro tanto* a heavy expense.   To these they have added the whole apportionment and assessment verbatim, with the resolutions under which it was made.   Whether some drain had not become necessary in the course of the repairs, we could not well learn, unless the writ had been addressed to the commissioners, as it was to a committee.

[ *280 ]          This comprehensive writ, not content with searching for all the direct proceedings, in order to compare them with *the powers and duties enjoined by the act, thus if possible, to raise some question of jurisdiction or regularity, then goes on to call for the return of several by-laws, prescribing certain economical or precautionary measures, relating to street improvements—such, as that there shall be no paving, till a level shall first have been established by the common council ; that before any of the work is done, proposals shall be advertised for ; that notice shall be first given to enable owners of lots to do their own repairs.   The return to this branch of the writ has given rise to another class of objections, viz : That the corporation has not proceeded according to the true construction of their own by-laws.   If not, it is said they have exceeded their jurisdiction, or committed an irregularity for which the assessment must be quashed. The question of conformity has been argued, and the answer may not be entirely clear ; but whether it be so or not, is, I apprehend, entirely immaterial.   It is enough for us to see that the jurisdictional limits prescribed by the state law have not been overgone.   The objection is entirely novel, that a by-law, passed by a corporation, prescribing to itself certain conditions on which alone an improvement shall be undertaken, or any other regulation made by it, shall so hamper and cripple its powers, as to disable it from performing those duties enjoined or authorized by the law of the state.   The latter is the charter, the constitution, the organic law of the city ; and a by-law, which in terms restricts any of its provisions, is equally void, as if it sought to enlarge them.

But, if otherwise, the subsequent law, resolution or other act of the corporation or its agents, passed or done within the scope of the organic law, is, so far as it may be inconsistent with the previous by-law, admitting that to be valid, *pro tanto* a repeal of the by-law.

Another class of objections is founded on allegations that the commissioners for making the assessment exceeded the authority conferred by the res-

New-York, May, 1840.—Ex parte Mayor, &c. of Albany.

olution or by-law which appointed them. This is said not to extend to the expense of paving and excavating; but only the expense on account of benefit conferred by the alteration of the level. And another objection *is that they were only authorized to assess from Van Wo-    [ *281 ]
ert street, not Lumber street; whereas they have assessed from
the latter. The last objection fails in point of fact, if we take into account the resolution returned as lost; that gives power to assess the expense of repairs from Lumber street, &c. In respect to the expense of paving and excavating, the commissioners were empowered to appraise the damages incurred in consequence of the alteration of the level. This may have included paving and excavating; if so, that properly entered into the basis of the assessment.

Again : an erroneous principle of assessment is said to have been adopted, at least in regard to the expense of excavating and paving. It is said this was assessed on different lots in proportion to their size, without regard to the work done or necessary to be done in front of each, whereas the owner of the lot is liable for excavating and paving, only in front of his own lot ; and cannot, upon any principle, or by any law, be made to pay for excavating or paving the street in front of his neighbor's lot. This is undoubtedly otherwise. The state law cited requires the assessment to be made on all the houses and lots benefitted, *in proportion to the advantage which each shall be deemed to acquire.* The question is one of general, not local benefit ; and the execution of the duty by the commissioners is the fulfilment of a power so entirely discretionary, that so long as they are seen to have acted upon persons and a subject matter within their jurisdiction, the proceeding is, in its nature, incapable of correction by certiorari. We have no power to look into the principles of this and the like assessments. We cannot compel a return to a certiorari inquiring for them, whether the writ be addressed to the corporation or their commissioners. We cannot interrogate the functionaries or agents appointed under the law, as to the operations of their minds. We might otherwise send our writ to every assessor, every board of road commissioners, or village or school district trustees in the state, to ascertain whether they have assessed A. or B. more or less than they should do. Not
being a proper subject of inquiry by the *writ, of course we can    [ *282 ]
not notice it when it improperly finds its way into the return.
*Le Roy* v. *The Mayor, &c. of New-York,* 20 *Johns. R.* 438. Beside, how do the corporation themselves find out the principle by which the over valuation may have been wrought ? By accident, if at all. They are perhaps informed by some remonstrance ; and the writ, I see, goes on to command, among other things, a return of remonstrances. The conjectural statement by the corporation, of a belief that their commissioners may have appraised and assessed on erroneous principles, a belief derived either from remonstrances or what the commissioners told them, one would suppose should be set

down among the last grounds for upsetting a proceeding of the character now in question.

I have already cited incidentally, *Le Roy* v. *The Mayor, &c. of New-York*, 20 *Johns. R.* 430. That was the case of a certiorari to review and correct an assessment made by order of the city corporation, for building a common sewer. The allegation was, that it had been assessed on a very few, whereas a great many were benefitted. The writ being then, as it was thought, without any direct precedent in this court, the plaintiff was put to encounter several motions to quash it. It was found to be clearly sustainable by the case of *Cardiffe Bridge*, 1 *Salk.* 146, and many other cases. Returns were accordingly called for, till from various orders, maps and other instrumental proceedings of the corporation, the court were enabled to see that a class of persons actually benefitted had been omitted in the assessment. That equality had therefore been violated which the court thought the statute, on its true construction, demanded, and they therefore set aside the proceeding. But in that very case they declared, that if the proper persons had been assessed, they could not correct the amount. The question as to persons was jurisdictional ; and after ordering a supplemental return, it so turned out, that on papers which the court thought were properly in the return, they could infer that the power of assessment had not been exerted in that full and just measure which the legislature had required. *Vid.* 20 *Johns.* 438, *Woodworth, J.* The words of the stat-

[ *283 ] ute *distributing the expense there, will be found very nearly the same as those in question. It was to be laid on all the houses and lots intended to be benefitted. And the case is an authority for no more, than that on certiorari the court will take up the admission in the return, that a greater number have been benefitted than the inferior tribunal had assessed. That was certainly a jurisdictional question ; in other words, the statute had not been followed. It was held to be a question of that nature, in *Whitley* v. *Fawsett, Sty.* 12, 13. There trover was brought for distraining under a warrant of the commissioners of sewers, for a tax set by them towards the reparation of sea walls ; and on justification by plea, (for it was then fashionable to plead specially in trover,) it appeared that there were 800 acres of land in the hands of the king, which were liable to contribute ; but were, notwithstanding, omitted in the assessment ; and so it was said the tax was unjust, because by the not taxing of them, a greater burden was laid on the rest of the land than of right ought to be ; and on demurrer, the court held this a good exception, saying the king's lands are taxable by the statute. Visiting the consequence of this illegal assumption of power on the collector, may have been too severe, as the English cases on this head appear generally to be, but the case clearly proves that the question is one of jurisdiction, and so justifies an interference by certiorari, if the return will admit the fact. Conceding, therefore, the authority of *Le*

New–York, May, 1840.—Ex parte Mayor, &c. of Albany.

*Roy* v. *Tho Mayor &c. of N. York*, we have, notwithstanding, declared that we would not look into the *quantum* of assessment, as whether too high or too low ; but would stop with the question as to the persons who ought to be assessed. *Bouton* v. *The President &c. of Brooklyn*, 2 *Wendell*, 395, 398. It has been said that the writ will lie even to remove the tax lists of a school district. *Storm* v. *Odell*, 2 *Wendell*, 287. But it cannot be directed to the trustees, because there is a power of appeal to the commissioners, and must therefore be addressed to the latter. *Id.* Accordingly, I remember having, at a special them, refused to remove the proceedings of commissioners of highways in laying out a road, by a *writ            [ *284 ] addressed to them, because in such case there may be an appeal to the county judges ; and, in the instance mentioned, there had been an appeal. The courts do not mean, therefore, when they say a certiorari will lie to remove assessments, that it may go in every case, and be addressed to any body, or that they will review any thing and every thing which may be improvidently called for in the process, as drawn by the attorney, or which may find its way into the return. They may exercise a discretion whether it shall go at all, even where a question of jurisdiction can obviously be laid hold of through a return. In cases of commissioners of sewers, the court will inquire, and withhold the writ, if there be danger of inundations from the delay or discouragement which may arise from granting it. *Case of Cardiffe Bridge*, 1 *Salk.* 146. And it seems they will always require, not only an affidavit that there will be no prejudice, but that notice should be given to the commissioners of a motion for the writ. *The King* v. *Butler*, 2 *Barnardist. K. B.* 283. So to remove and suspend proceedings on a general assessment, to the amount of thousands of dollars, because A. B. ought or ought not to be assessed, would sometimes work a great evil. Then the writ had better be refused, and the party be put to his action ; or the court may by rule absolve the inferior jurisdiction from the charge of a contempt, if they proceed after the writ shall have been served. *Patchin* v. *The Mayor, &c. of Brooklyn*, 13 *Wendell*, 664.

So much for the office of the certiorari to review assessments, as it has been understood in this court.

The writ now in question, the return and the argument built upon it, assume a latitude extending, so far as I have been able to discover, beyond any thing warranted by the books ancient or modern. The precedents more immediately in point are those respecting the writ of *certiorari* directed to commissioners of sewers, acting under various common law commissions and statutes of England. *Vide Viner's Abr. Sewers*, (A). They have power in certain prescribed forms to assess for benefit, and levy the assessments by warrant of distress. *Id.* (B), *anc vide *Petersd.   [ *285 ] *Abr. Sewers*, *note*. The limits within which the court hold themselves, in those cases, will be seen by *Custodes, &c.* v. *The Inhabitants of*

*Outwell, Tyd, Newton, &c.* running through *Styles' Rep.* 178, 180, 184, 191. The inquiry there was jurisdictional, of places and persons made liable to contribute by common law or statute, or by prescription, within the boundaries of the particular commission, as these matters appeared upon the face of the inquisition and other documents making parts of the proceeding. Upon them it seems the court also took up the question whether the legal method of apportionment had been pursued; as whether it should be so much by the acre, or according to the value. With this latter the court seemed to be finally satisfied by the answer, that *non constat* but the acres were all of the same value ; though *Roll, C. J. p.* 185, said it ought to be equal and according to the number of acres, and it is not so here. The proceeding was reversed only because the inquisition did not state that Newton and Tyd, the vills taxed and complaining, were within the hundred of Witsbitch for which the commission was granted. All went on the face of the record, viz. the commission, order, inquisition, &c. which were returned by the commissioners. Nothing extrinsic was mentioned by the court, and hardly by the counsel. The remark of Roll, that the assessment ought to be equal and according to the number of acres, was made on what appeared by the inquisition. This should state the assessment to have been equal, &c., because the statute says it shall be so made. *Viner's Abr. Sewers*, (A) *Id.* (B). *pl.* 1. *Marg. note citing what Roll said.* The amount is, that the statute must appear on the record to have been pursued according to its meaning. In another case the distress was for an acre-tax, and the king's bench said they thought this was not a fit way, as it put the commissioners to inquire of the value of every acre ; but on return of the orders by certiorari, they said *this court cannot determine it, but the commissioners must ;* and in trespass or trover it may be proper. *Commissioners, &c.* v. *Newburgh,* 3 *Keb.* 827 ; that is, as I understand it, in an action for the distress, where you may go into evidence, the levying *this as an acre-tax may appear to have been proper. And if a party mean to examine in respect to collateral facts which take away jurisdiction, it is well known that he may have an action. It is very common against persons acting under the warrants of commissioners of sewers. *Vide Petersd. Abr. Sewers,* I, *pl.* 2, *&c.* In view of this, *Phillipps,* in the 7th ed. of his book on Evidence, 2 *vol. p.* 433 to 444, (*see Am. ed. of* 1839,) has thought it useful to treat of the rules of evidence applicable to that particular head. Jurisdictional inquiries, as there spoken of, may, in some cases, be thought more free than comports exactly with later English and American decisions. But it will at once occur that such inquiries on certiorari would be impracticable, at least, without saying that the attempt to prosecute them would be absurd. It is even said by Phillipps, that the plaintiff may prove that he derived no benefit from the sewer on account of which he is rated. *Vide id.* 438, 442. In the case cited by him, *Stafford* v. *Ham-*

[ *286 ]

*ston,* 2 *Brod. & Bing.* 695, more fully reported in 5 *Moore,* 608, this was cousidered a jurisdictional question, on which the commission, finding of the jury, decree and rate should not be a conclusive protection even to the collector ; and several cases were cited to prove that this is so, although the plaintiff appear to reside, and his property to lie within the limits of the commission. The case in *Moore* went on the very ground that the party had no other remedy. He cannot, therefore, as has been sometimes attempted in this court, bring a certiorari, and assign want of jurisdiction as an error in fact, and so go to a jury. *Haines* v. *The Judges of Westchester,* 20 *Wendell,* 625. And though, since *Savacool* v. *Boughton,* 5 *Wendell,* 170, and other cases, on to *The People* v. *Collins,* 19 *Wendell,* 56, and I apprehend according to some English cases, *vide* 19 *Wendell,* 62, 3, the inquiry could not be carried so far, yet the case is not therefore the less an authority for saying that a certiorari cannot easily reach such collateral matter. In *Brittain* v. *Kinnaird,* 4 *Moore,* 50 ; 1 *Brod. & Bing.* 432, *S. C.,* the court conceded this principle, while the case itself came nearer the spirit of our own decisions in respect to the protective power of process.

*\*The Queen* v. *Inh. of Westham,* 10 *Mod.* 159, is a farther il-  [ *287 ] lustration of what the court do on certiorari. There the commissioners charged inhabitants with the expense of a tumblingbay and lock, erected for private benefit, which must of necessity be a nuisance. The whole matter appearing on the face of the order, it was quashed. Several cases in which actions have been maintained against persons acting by the authority of the commissioners, with a view to try questions of jurisdiction, will serve still farther to illustrate the distinction. *Anselm* v. *Barnard,* 2 *Keb.* 675. *See also Ball* v. *Pattridge, Sid.* 296 ; 2 *Keb.* 82, *S. C.* It will be found farther, very fully illustrated by cases of actions, and especially cases on writs of certiorari, collected in *Viner's Abr. Sewers* (*G,*) *pl.* 1 *to* 18. The rule upon certiorari, which we have several times had occasion to declare, is there summed up at *p.* 12., citing *Rex* v. *The Commissioners of Fenns,* 2 *Keb.* 43. The case is given in the exact words of Keble, and concludes thus : " This court may judge whether they (the commissioners) *have pursued their power ;* which they (the court) *must take according to their return.*" The same case declares another principle, which has been held by this court, that a writ of certiorari will lie to an inferior tribunal, even though the act by which it is created, declare its adjudication to be final. *Vid. Lawton* v. *Com. of H. Ways of Cambridge, &c.* 2 *Caines'* 179. *In* 2 *Keble,* it was held to lie, though the act declared that the proceeding should be *without appeal.* This was a vigorous assertion of jurisdiction ; but the compass of the writ is carefully limited at the same time, as we have lately fixed it in a series of cases. *Birdsall* v. *Phillips,* 17 *Wend.* 464. *Allyn* v. *Com. of H. Ways of Schodack,* 19 *Wend.* 342 ;

*Prindle* v. *Anderson, id.* 391 *; Simpson* v. *Rhinelanders*, 20 *Wend.* 103 *; Johnson* v. *Moss, id.* 145 *; id.* 148, *S. C.; Wilson* v. *Green, id.* 189.

The amount of these is, that we will not, in any case, on a common law certiorari, go beyond the question of power, which is another word for jurisdiction ; and in searching for power, we will confine ourselves to matter properly introduced into the return.  If the instrumental part of [ *288 ]  the *proceedings below, fail to present a case for legal action there, we are thus enabled to see a want of jurisdiction.  *The Queen* v. *Inh. of Westham*, before cited, is one instance.  Thus again in the *Inh. of Oldbery* v. *Safford, Sid.* 145, though the commissioners of sewers had power to decree that J. S. should repair the flood-gates of his mill, they had not power to make an order that he should be imprisoned for disobedience.  Therefore an order for imprisonment was reversed on certiorari, while the order to repair was allowed to stand.  So although the case be in fact within their jurisdiction, but nct fully shown by the documents returned ; *Inh. of Bromley, &c. at Blackwell*, 1 *Keb.* 4 ; yet in form the proceedings need not be so exact, as in an indictment.  *Ld. Dunbar's case, Sid.* 78.  In one case, the court refused to quash an order for mere mispleading ; and they even refused to file the return.  *The King and Heart* v. *Comrs. of Sewers of Lincolnshire*, 2 *Keb.* 339, 40.  I presume this mispleading, must have been formal only ; because it is plain, that an attempt to set out a title and failing in substance, would be the same as showing none at all.

The proceeding now sought to be questioned, is the exercise of an ordinary power for repairing a street by a municipal corporation, acting within its territorial limits, and on persons liable to be assessed for the expense.  The corporation has also complied with the forms required by its charter.  Saying so much, answers all the objections which we have power to notice.  The defendants did well in omitting to return evidence heard, either before themselves, their committee, or the commissioners.  The writ was wrong in requiring it.  We cannot look into testimony on the merits, even where the return comes from a tribunal bound to act upon the general law of evidence ; *a fortiori*, where it is governed by its own discretion on matters lying under its personal observation, and being at the same time destitute of the least power to coerce the production of papers or the attendance of witnesses.  The writ might as well go to a jury who assess damages for a road.

The committee of the common council, also named in the writ, [ *289 ]  *did right in not returning at all.  It might as well go to any occasional committee in the state, whether appointed by a corporation, or a voluntary association, or meeting of individuals.  It might, with even more colour of propriety, have been addressed to the city superintendant or commissioners, for they are mentioned as officers by the organic law.  Yet, for this purpose, they are no more than subordinate agents of the cor-

poration ; and the writ could go to them with no more propriety than to a constable or jury acting in a justice's court.

The writ recites no complaint of the persons assessed, nor any one of them, that error had intervened ; and we are not informed in any part of the record, what persons are disposed to complain. These last are defects which would have furnished good grounds for quashing the writ. But as the corporation have made a return, and have appeared by counsel, and moved to affirm the proceedings, we, therefore, render

Judgment of affirmance.