*19
By the Court,

Coaven, J.
The application to set aside the rule for confirmation, must of course be denied. It Avas held in the Matter of Beekman-street, (20 John. R. 269,) that in revising and confirming or setting aside the reports of commissioners, in Nerv-York street cases, this court derived its poAvers entirely from the statute; (2 R. L. of 1813, 408;) under Avhich Ave act, not as a court, but commissioners. Our poAvers Avere likened to those of a commissioner under the insolvent act. Our award is" therefore like that of any inferior magistrate having a limited jurisdiction; and Ave have no power to open it on motion, any more than a justice would have to open a summary conviction before him. It Avas said in the Matter of Canal-street, (11 Wend. 154,) that we cannot set aside proceedings upon the .merits, any more than arbitrators Avho have awarded. We cannot allow a discontinuance after confirmation, even on request of the corporation.
But it is said, here is an irregularity, and, among other things, the want of due notice. If Ave are mere commissioners or arbitrators, we have no more power to interfere on the ground of irregularity, than merits. Who ever heard of a motion before a justice to set aside a summary conviction, because of irregularity? The very point in question Avas decided in Stafford v. The Mayor, &c. of Albany, (6 John. R. 1, 7 id. 541, S. C.) There, the mayor’s court attempted to set aside an order confirming the assessment in a street cause, on the express ground of irregularity. The power of review and confirmation was conferred by statute on the court, who might, as we do, either affirm or disaffirm. This court held, that upon doing either, the mayor’s court was functus officio, and could not interfere with the order on any ground. Their act was likened to a discharge granted by a court under the insolvent act. Beside, in the case before us the delay to move is not very satisfactorily accounted for. The report Avas confirmed more than a year ago. The proceeding was notorious, and it behooved the parties interested to examine promptly, if they intended to object on the ground of technical irregu *20 larity. I do not, however, go on that ground; hut on the want of power.
The motion to set aside the proceedings being denied, it is insisted that we are bound to grant a writ of certiorari, and set them aside in that form; and a writ is proposed to bring up the resolution of 1836, and all things touching and following that resolution, down to and including the confirmation of the report.
The resolution is said to be illegal, because, 1. It was passed without petition. One answer to this is, that none was necessary. The corporation may proceed without petition and on their own motion, by the express terms of § 177, 2 R. L. of 1813, p. 408. This section authorizes them to proceed without or with a petition.
2. It is said, the resolution was a judicial, not a legislative act; and therefore could not be passed by separate chambers pursuant to the act of 1830, (Sess. L. of that year, p. 125.) Whatever may be its character, however, no one can read the act without seeing, that a resolution of this sort is plainly directed to be considered and passed in the separate chambers, and signed by the mayor, the same as by-laws or ordinances. (Vid. Í 7. 10, 12.)
3. It is said, the ayes and noes were not called, as required by id. § 7; nor, 4, were the reports of committees or votes published as required by that section. To these objections it is answered, that the 7th section is but directory, and the alleged omissions consequently do not vitiate the proceedings. And to this opinion we strongly inclined in the late case of Chapel-street, which was moved before the Ch. J., and decided after consultation in January term, 1841. But whether this answer be satisfactory or not, there is no need of inquiring; for I am cleárly of opinion that neither of the objections are the subjects of certiorari, even if we assume that they are valid. The same thing may be said also of the first two objections. A certiorari to reverse a mere corporate act, is without precedent ; though if it should be altogether destitute of authority, and followed by a judicial decision which would therefore be *21 void for want of jurisdiction, the corporate act might be examinable on certiorari as incidentally vitiating the latter: for it is too late perhaps to deny that there are some judicial acts of municipal corporations, or rather acts of certain officers of those institutions, which may, in the discretion of this court, be reviewed by certiorari. (Le Roy v. The Mayor, &c. of New-York, 20 John. Rep. 430. Parks v. The Mayor, &c. of Boston, 8 Pick. 218. Starr v. Trustees of Rochester, 6 Wendell, 564.) But in order to warrant our interference in this form, the act must be plainly judicial. The writ lies to inferior courts only. (Bacon's Abr. Certiorari, B.) And even then, if the act be merely ministerial, the writ will not lie. (Rex v. Lloyd, Cald. Cas. 309.) In the case cited, the court of quarter sessions passed an order that Jones, an attorney, be employed to prosecute an information against the defendant, who was a justice, for imputed misdemeanors committed by him officially; and that the expenses should be defrayed by the county. A certiorari issued to remove the order; but, on motion, it was quashed, Buller, J. saying, the act was not judicial. The resolution in the case before us, is certainly no more. The corporation, by their agents, determine that they will appropriate certain specific grounds for a public square; and direct their counsel to take the necessary legal measures to carry the resolution into effect. It would be a plain misnomer to call such an act judicial. Independently of the statute of 1830, the law would hardly require a formal resolution. Any act or series of acts showing the assent of the corporation, such as entering upon and completing the work by their agents, would be sufficient. The act of 1813, § 177, is, that whenever the corporation shall be desirous to open an avenue, street, &c., it shall be lawful for- them to cause it t» be done in a certain manner. Actually doing this, would be a sufficient indication of their will. It is like the canal commissioners, or the agents of a rail-road (b) or turnpike corporation, determining to take certain land for the *22 purposes of a canal or road. A sheriff has power under a fi. fa. to seize and sell lands or goods in a • certain way, and on giving certain notice. Suppose him to proceed irregularly, or to omit giving notice; no one ever supposed that a writ of certiorari would lie. He may subject himself to an.action; but the duty is merely ministerial. The taking of property in the cases supposed, is the exercise of a naked power conferred by law. So, the taking of land by the corporation for streets or squares. A writ of certiorari does not lie for an irregular execution of a power, though it be conferred by statute. (Vid. Mellen, Ch. J. in Harlow v. Pike, 3 Greenl. Rep. 439.) This has been held in regard to the warrants of justices, which they are required to issue on the information of others, without any previous conviction. (Rex v. Lediard, Sayer, 6. Ex parte Taunton, 1 Dowl. Pr. Cas. 54. And vid. Pugsley v. Anderson, 3 Wend. 468 ; and Pearsall v. Commissioners, &c. of North Hempstead, 17 Wend. 15.) A certiorari, it is admitted, will not lie to commissioners of bankrupts, because they have an authority only; not jurisdiction. (Rex v. Inh. of Glamorganshire, 1 Ld. Raym. 580.) The power to interfere by certiorari is laid down very broadly by some dicta, importing that all infringements of right by persons legally clothed with authority to act, but who exercise that authority illegally, may be corrected by certiorari. (Lawton v. Com. of High. of Cambridge, 2 Cain. 179, 182. Wildy v. Washburn, 16 John. 49, 50. Le Roy v. Corp. of N. Y., 4 John. Ch. R. 356.) None of the cases, however, in which this language is used, and none which were referred to by the learned judges using it, have gone beyond a review of judicial decisions. Taking these dicta in the abstract, we might remove every by-law, or other corporate act, of every corporation in the state. Parks v. Mayor, Spc. of Boston held, that where the mayor and alderfnen had a right to take property for laying out or widening a street whenever in their opinion it was necessary, the taking was an exercise of judicial power. (8 Pick. 225.) But no other case has, I think, gone so far; and a liberal application of that decision would seem to take in every act which a corpora *23 tian can do under any statute power whatever. It was said, the corporation were required to adjudicate on the necessity of talcing property; but the same thing may be said of every act which a corporation may do under the most common power, even affixing their corporate seal. They always have a right to decide, accordingly as in their opinión any act may be expedient or necessary. In a subsequent case it was holden, that an adjudication of convenience or necessity by the mayor and aldermen of Boston would be conclusive, if exercised in a case where they had power to.act. (Fay, petitioner, &c. 15 Pick. 243, 254.)
Much confusion has arisen from assimilating corporations • having street powers, to the English commissioners of sewers. The former are artificial persons, having political or private authority; the latter constitute a court. Nearly all the powers of the former are legislative, executive or ministerial; nearly all those of the latter are judicial. Blackstone says, the commissioners aré a court of record, and he defines their powers. (3 Bl. Com. 73.) Their powers were also much considered in The Duke of New Castle v. Clark, (8 Taunt. 601, 622 et seq. ; 2 Moore, 666, 701 et seq. S. C.) Every judicial act is done by them personally, as judges, and in respect to many matters they are bound to inquire by a jury. Very few if any judicial acts are done by corporations, as such; but rather by officers whom they appoint in virtue of their executive power. These latter are sometimes authorized to act judicially; but the act is considered as done by them—not by the corporation; and whenever their acts are the subject of review on writ of certiorari, the writ should be directed to them, and not to the corporation.
There seem to be three kinds of acts which may be done by corporations or by officers of corporations. The first are properly corporate acts—such as making by-laxvs, voting taxes, appointing officers, and various acts which natural persons may do. These are properly corporate acts, in respect to which no certiorari lies any more than to natural persons. Both exercise discretion or judgment; and *24 yet their acts are not judicial. The second kind grows out of powers not properly corporate. They are devolved on the corporation or some of its officers by the corporate name; but this is a mere designation of persons. The most common of these powers relate to taking and setting apart land for the opening and repair of streets, for sinking wells and making reservoirs; in other words, taking private property for public use. When such things are left to the absolute discretion of the corporation or officers, they are evidently no more than mere public agents. The state exercises its right of eminent domain through a naked power confided to them. If they exceed their power, they are wrong-doers ; the act is void, and they may be Jiable to an action, or may be restrained by bill in equity; but not by certiorari, any more than common road commissioners who take wild land, or canal commissioners who take land or stone for the purposes of the canal. Selectmen, laying out a town way, omitted to give notice. Held, that trespass lay, because they had exceeded their power; but Mellen, C. J. said that a certiorari would not lie. (Harlow v. Pike, 3 Greenl. 438.) So of a resolution by vote to levy a tax in a town, city, or school district. A third sort of power is judicial, and almost always conferred either on certain permanent officers of the corporation, such as the recorder of aldermen, or officers created for the occasion. And here a certiorari will lie, e. g. to an alderman, acting as a justice of the peace, and even error, e. g. from the mayor, recorder and aldermen, acting as a court of record. Here, again, they do not act as officers of the corporation, but rather of the state, like any other local judges appointed to administer justice. (Vid. 3 Bl. Com. 81.) Take it, that aldermen or trustees are authorized to levy money for repairing a bridge, or laying or opening a street, and you have the case of Caerdiife bridge. Justices were by statute authorized to levy money for repairing it. They levied money to make wears, when it was complained that they had exceeded their jurisdiction; and this was held a case for certiorari. (1 Ld. Raym. 580. 1 Salk. 146.) *25 The justices were held to act as judges, and the writ was directed to them. In analogy, it has been thought that assessors and other officers having power to assess and issue a warrant to levy money, are judges, and their proceedings subject to revision by certiorari. This is probably the outside of the cases which favor the writ. The case cited is the foundation of some writs of certiorari with us and neighboring states directed to corporations by name; and when such a writ is obtained, it has become fashionable to press for bringing in and trying the regularity of all acts concerning the question, legislative, executive and ministerial, as well as judicial. (Vid. Ex parte Mayor, &c. of Albany, 23 Wend. 277, 282, 3.) In the case of Fay, petitioner, (15 Pick. 243, 254,) the writ sought to try the power of the corporation of the city of Boston to demise a certain ferry in prejudice of the petitioner’s right to a neighboring ferry, on an inspection of the records, orders and doings of Boston. It was disallowed; the court saying, the acts sought to be inquired of were not judicial. Such extravagant attempts to enlarge the power of the writ, has perhaps arisen from the formal error of ever allowing it to go to a corporation at all. That error seems to have begun with us in Le Roy v. The Mayor, &c. of the city of New- York, (20 John. R. 430,) when it should have been addressed to the commissioners of assessment merely; as it must be to us, in cases where we, as commissioners, have power to act upon an assessment by affirming or reversing it on appeal. The error of a direction to the corporation in street cases was noticed, and held to be fatal in Bogert v. The Mayor, &c. of New-York, (7 Cowen, 158. Vid. Commissioners of Highways of Kinderhook v. Claw, 15 John. R. 537.) With regard to any thing beside the act of assessment in the case before us, I see nothing which amounts to a judicial act. I admit that most, not to say all corporate acts, require an exercise of discretion or opinion. What power involves a greater or more delicate exercise of discretion, than that of electing officers and passing by-laws'? Yet who ever heard of a certiorari to correct irregularities in either re *26 spect 7 So of all mere naked powers. How much more nearly do the powers of bankrupt commissioners resemble those of a court, than the power of a corporation to take land for the purposes of public improvement. (Vid. 1 Cooke's Bankrupt Law, § 3.) They may, in their discretion, summon the bankrupt, examine him, or commit him if he refuse to be examined. They may also examine witnesses; and all this, with a view to discover and seize his effects. They may commit witnesses, in order to compel an answer; and yet they are not a court in such a sense that a certiorari will lie to them. Their proceedings may be questioned collaterally. (Holt, C. J. in Groenvelt v. Burwell, 1 Ld. Raym. 467, and in Rex v. Inhabitants in Glamorganshire, id. 580. The Court, in Kinder v. Williams, 4 T. R. 378.) They were accordingly held punishable" by action, for committing the bankrupt after he had made a satisfactory answer. (Miller v. Seare, 2 Black. Rep. 1141.) De Grey, Ch. J. said, “ they have very little judicial discretion. Their office is chiefly executory or ministerial.” I have not been able to find a single instance in the English books of a certiorari addressed to a corporation. Their irregularities seem there to be redressible by mandamus, quo warranta or action only.
The fifth objection, that there was no authority to apply for the appointment of commissioners, is unfounded in fact. The resolution instructs the counsel to take measures for prosecuting the improvement. Beside, the motion was made, and the corporation has adopted the proceeding. That is enough. Again, a certiorari will not lie on the question whether a corporation has given a regular power to its agent.
The sixth objection brings us into the region of proceedings which may be regarded as judicial. It is, that notice of the motion to confirm the commissioners’ report was not given pursuant to the 9th section of the act of 1839. {Sess. Laws of that year, p. 185.) The answer is, that notice of this particular motion was provided for by the previous *27 section 4th; and so is expressly excepted from the operation of 9 th section.
Four other objections relate to the assessment. Two of these complain of irregularity, viz: 1. That the commissioners did not proceed jointly in making the assessment; and 2. That they inserted a round sum for costs and charges, without these being taxed pursuant to § 12. The rest relate to the merits of the assessment. A clear answer to all these objections is, that they should have been interposed against the motion to confirm the report. (2 R. L. of 1813, p. 413.) This opposition is in the nature of an appeal; and where a remedy is given by appeal, a certiorari should not be granted. (Rex v. Uttoxeter, 1 Const’s Poor Laws, 292. Rex v. Justices of Somersetshire, 1 Dowl. & Ryl. 443. Storm v. Odell, 2 Wend. 287. Abbott, Ch. J. in Rex v. The Justices of St. Albans, 5 Dowl. & Ryl. 538, 541; 3 Barn, & Cress. 698, S. C. Ex parte Mayor, &c. of Albany, 23 Wend. 283, 284. Ld. Mansfield, in Rex v. Whitbread, 2 Doug. 553, and in Rex v. Abbot, id. 555, note.)
The objections which go to the merits are susceptible of another and a conclusive answer. They respect either improper omissions of land from the assessment, or the injurious extension of the assessment to persons who, it is said, cannot be benefitted. This involves an inquiry into the evidence, which cannot be instituted by a common law certiorari. (Birdsall v. Phillipps, 17 Wend. 464, 467, 469. Prindle v. Anderson, 19 id. 391, 393. Johnson v. Moss, 20 id. 145. Allyn v. The Commissioners of Highways of the town of Schodack, 19 id. 342. Simpsoti v. Rhinelanders, 20 id. 103. Wilson v. Green, id. 189. Ex parte Mayor, &c. of Albany, 23 id. 277, 281, 287, 288.) To these cases, and the authorities cited in and adopted by them, may be added, Rex v. Preston-upon-the-Hill, {Burr. Set. Cas. 77,) a case very fully considered by Lord Hardwicke and the other justices of the K. B. In Rex v. Moreley, (2 Burr. 1040, 1042,) Lord Mansfield presiding, the court said: “ A certiorari does not go to try the merits of the question ; but to see whether the limited jurisdiction have exceeded *28 their bounds.” (Vid. Philadelphia and Trenton Rail Road Company, 6 Whart. Rep. 25, 41.) I know this rule has not always been strictly adhered to. It has been sometimes said, that the principle of the assessment may be reviewed by certiorari. Baldwin v. Calkins, (10 Wend. 167,) is one instance. This would many times require the return of a great body of evidence. We have often held of late, that evidence touching the merits cannot be reached by a certiorari; and the doctrine is so entirely settled, that all applications for a certiorari commanding the return of evidence should be refused, or if the writ be inadvertently issued, commanding a return of the evidence, it should be quashed; or, if sustainable on other grounds, the return should be disregarded pro tanto.
The last objection, viz. that the corporation have lost their jurisdiction by suspending the opening of the Square more than fifteen months from the confirmation of the report, contrary to the act of April 20, 1818, (Sess. Laws of that year, p. 196,) furnishes no foundation for a certiorari. If they could be regarded as á court, and were about proceeding judicially, a writ of prohibition might go. But they cannot. They are here again acting ministerially, in executing a statute power.(a) We might as well grant a certiorari to reverse a justice’s writ of execution, because he had issued it irregularly, or rather because he was about so to issue it.
Thus, I think, all the objections raised are, in either alternative of the motion, clearly insufficient to warrant our interference.
It is scarcely necessary, therefore, to say, that independently of the answers given, we have a discretion, to grant or withhold a certiorari in all cases; and that, in general, we ought not to allow the writ where assessments of taxes or awards of damages are in question, which affect any considerable number of persons. If there be a want of juris *29 diction even in the judicial act sought to be reviewed, or in other words, if there be an excess of legal power, by which any person’s rights may be injuriously affected, an action lies; and it is much better that he should be put to this remedy, than that the whole proceeding should be arrested and perhaps finally reversed for such a cause. The assessments and tax rates of the government, both general and local, are all imposed and framed by the oificers of municipal corporations or quasi corporations, some portion of whose duties may be considered judicial, and therefore technically the subjects o of a writ of certiorari; and the evil would be intolerable, if these were to be deemed, as a matter of course, liable to arrest and general reversal, because, in respect to a single person, or any number of persons, the officers may have overstepped the precise line of their jurisdiction. I forbear to pursue this question, however, as it has been, but a short time ago, very fully and ably considered by my brother Bronson in The People v. Supervisors of Allegany, (15 Wendell, 198.) A certiorari removing a county rate was there quashed, even after a return made and argument on the merits, because, though the court had power to grant the writ, the public exigencies required that it should be withholden. Several authorities were cited, where the writ had been refused, though operating upon assessments comparatively very small. For one I never could see why these authorities should not control in respect to city and village assessments for streets, sewers and the like improvements, when the assessment falls upon any considerable number of persons. I know the writ has sometimes been granted in such cases by this court. Several instances were mentioned in The People v. Supervisors of Allegany, by Mr. Justice Bronson. But the authorities regulating the general exercise of discretion are certainly the other way. In the leading case of Rex v. Uttoxeter, reported in several books, (the poor-rate case,) the K. B. at first took cognizance of the rate, and quashed it on certiorari. (1 Barnardist. K. B. 443, 4 Geo. 2.) But afterwards, on great debate in respect to a similar rate *30 in the same parish, the court denied the writ, on the ground, among others, of public inconvenience. (2 Str. 932. Kelyng, 117, S. C.) In the subsequent case of Rex v. The Justices of Shrewsbury, as reported, 1. Const's Poor Laws, 293, the chief justice said, the true reason for refusing a certiorari to remove poor rates, was the public inconvenience. Vide 2 Sir. 975, S. C., though the reason is not there given so much at large, as in Const. Thus the K. B. fluctuated. But they finally discovered, what every court must, that the habitual use of the certiorari to remove rates, would be too great an evil to be endured. Public inconvenience was, the main ground of denying the writ in the late case of Chapel-street.
Were this ground alone in the principal case, therefore, and admitting that there might be some errors tangible by a certiorari, I should still be against the granting the writ.
Motion denied.;
The Judsre added, a motion is also made for a certiorari to the justices of this court. The granting of such a writ is commonly a matter of course, in order to put the parties complaining of a grievance on their way to the court for the correction of errors. We shall not consent to review our confirmation made as commissioners; but if the parties think the writ will be of any value to them, they may take it in respect to the confirmation, but for no other purpose. (Matter of Carlton-street, 20 Wendell, 685. Patchin v. Mayor of Brooklyn, 13 id. 668.)
Rule accordingly.

 See The New-Jersey Rail Road and Trans. Co., 2 Harr. R. 25.

 See The People v. The Supervisors of Queens, (1 Hill, 195, 196.)