1820.

LE ROY and others *against* THE MAYOR, ALDERMEN, AND COMMONALTY of the City of *New-York*.

This Court, has no power to interfere with, or to set aside an *assessment* on the proprietors and occupants of lots, to defray the expense of a *common sewer*, made by commissioners, under the direction of the Mayor, Aldermen, and Commonalty of the city of *New-York*, pursuant to an act of the Legislature, for that purpose, on the ground merely of a mistake in judgment of the commissioners of estimate and assessment, in not including *all* the owners or occupants intended to be benefitted by the sewer; there being no allegation of bad faith or partiality in the commissioners, in making the assessment, which, after being ratified by the *Common Council*, is declared, by the act, to be final and conclusive.

The only remedy, if any, for the party aggrieved, is at law.

*Feb.* 15*th.* and *March* 1*st.*

THE plaintiffs filed their bill for relief against an assessment made to defray the expense of a common sewer, in the city of *New-York*, and for an injunction to restrain the defendants from collecting the assessment, or taking any measures for that purpose.

The material facts stated in the bill will be found in the opinion delivered by the Court.

*Feb.* 15*th.*

*S. Jones*, jun. for the plaintiffs, after reading the bill, moved for an injunction.

*Edwards* and *H. Bleecker*, contra.

The Chancellor took the bill for consideration.

*March* 1*st.*

THE CHANCELLLOR. The object of the bill is, to be relieved against an assessment made under the direction of the corporation of the city of *New-York*, to defray the expense of a large common sewer, in *Canal-street*, in the said

city. The assessment was directed and made under the provision contained in the 175th section of the act of the legislature, passed the 9th of *April*, 1813, entitled, "an act to reduce several laws relating particularly to the city of *New-York*, into one act."

By the provisions of the act, it is declared to be lawful for the corporation to cause, among other improvements, "common sewers to be made in any part of the city, and to cause estimates of the expense to be made, and a just and equitable assessment thereof, among the owners or occupants of all the houses and lots intended to be benefitted thereby, in proportion, as nearly as possible, to the advantage which each shall be deemed to acquire, and to appoint skilful and competent disinterested persons to make every such estimate and assessment; and those persons shall take an oath to make the same fairly and impartially, and having made such estimate and assessment, shall certify the same to the common council, and being ratified by it, shall be binding and conclusive upon the owners and occupants of such lots, so to be assessed." The bill states, that all these provisions of the act have been complied with, except, that the assessment has not embraced a sufficiently extensive district of the city, to include all the owners and occupiers of lots intended to be benefitted by the sewer. It is contended by the bill, that the owners and occupiers of all the lots from whence, by the permanent regulations of the corporation, the waste water is carried off into *Canal-street*, are, and were intended originally to be benefitted by the sewer, and that they ought to bear a rateable proportion of its expense. There may be an error of judgment upon this point, both in the persons who made the estimate and assessment, and in the common council who heard the objections of the plaintiffs, and yet ratified the assessment; but the greater difficulty with me is as to the question of jurisdiction. I cannot find that the Court interferes in cases of this kind, where the act com-

1820.

Le Roy
v.
Corporation
of N. York.

plained of was done fairly and impartially, according to the best judgment and discretion of the assessors; and a precedent once set, would become very embarrassing and extensive in its consequences. If the power under this statute had been exercised in bad faith, and against conscience, I might have attempted to control it; but a mere mistake of judgment in a case depending so much upon sound discretion, cannot properly be brought into review, under the ordinary powers of this Court. There must have been a thousand occasions and opportunities for the exercise of such an appellate jurisdiction, in the history of the jurisprudence and practice of the *English* Court of Chancery, if such a jurisdiction existed, and yet we find no precedents to direct us. A mistake of judgment in the assessors, upon the matter of fact, what portion or district of the city was intended to be, and actually was, benefitted by the common sewer, can hardly be brought within the reach of that head of equity jurisdiction which relates to breaches of trust. Here is not, strictly speaking, a violation of duty. No bad faith or partiality in the assessors is pretended. The aid of this Court might as well be asked to review every assessment of a land tax, or a poor rate. I apprehend, it would require a special provision by statute to authorize Chancery to interfere with these assessments. Instances are numerous in the *English* law, in which jurisdiction is given to the Chancellor, under local or private acts; and the cases imply that a statute was requisite to give the jurisdiction.

Let us examine the case *ex parte Coxall*, (3 *Atk.* 639.) which concerned the *city of London tithes*, and it will afford some instruction, as to the extent of equity powers. The statute of 22 and 23 *Charles* II. directed that certain persons in each ward and parish, should assemble in each parish, and should " proportionally assess upon all houses, shops, warehouses, and cellars, &c. the whole respective sum by the act appointed, in the most equal way, that the said assessors, according to the best of their judgment, could

make it." The act further provided, that if any difference should arise in the assessment, and a parishioner should find himself aggrieved by the assessment, an appeal lay to the Lord Mayor, and Court of Aldermen, who were to summon all parties concerned, and hear and determine the same, in a summary way, and the judgment by them given was to be "final and without appeal." After the assessment was made and settled, the Lord Mayor, upon refusal of any of the inhabitants to pay their assessments, was to issue his warrant of distress. The act further provided, that if the Lord Mayor or Court of Aldermen should refuse to perform any of the duties required of them, the same should be performed by the Lord Chancellor with two of the Barons of the Exchequer. Upon this act, Lord *Hardwicke* observed, that the authority of the great seal *did not extend to every case under the act, but only where there had been a refusal, by the Lord Mayor, &c., to execute the powers ;* and he, also, observed, that in case of any variance or difference between the minister and the parishioners, as to the assessment, *the Court of Chancery had no jurisdiction,* unless the Lord Mayor refused to take cognizance.

Lord *Hardwicke's* opinion equally applies to the case before me. If Chancery had no jurisdiction, when an assessment had not been *proportionably* made, *in the most equal way,* as the *English* statute directed, and if the only relief was in the review of the Lord Mayor and Court of Aldermen, whose decision was declared to be " final and without appeal ;" we are equally required to say that Chancery has no jurisdiction here, for an unequal assessment, because the Mayor, Aldermen, and Commonalty, in Common Council convened, are here, also, to ratify the assessment, which includes a review of it, and a power to correct it, if not duly and justly made ; and their decision is declared to be " binding and conclusive."

In the case of *The Attorney General* v. *The Foundling Hospital,* (4 *Bro.* 165.) a bill was filed, and an injunction

1820.

LE ROY
v.
CORPORATION
OF N. YORK.

1820.

Le Roy
v
Corporation
of N. York.

asked, to restrain the defendants from building on estates belonging to the hospital. Lord Commissioner *Eyre* observed, that where trustees or governors abused their trust, the Court could take notice of it, but where the management of a charity was entrusted to governors or guardians, by statute, they had a right to exercise their discretion, and though the Court should be of a different opinion, it would not set up that opinion against the discretion of the trustees. The other two Commissioners concurred, and the motion for an injunction was denied. The same principle was admitted and supported in *Haight* v. *Day.* (1 *Johns. Ch. Rep.* 18.) It may be said, that the assessors in this case had no discretion, but were bound to make the assessment in just proportions among all the owners and occupants benefitted by the sewer. The discretion in these cases, means the exercise of sound judgment according to equity—*discretio est scire per legem quid sit justum;* the assessors certainly had that discretion, in determining the extent and value of the benefit, and their case comes within the influence and principle of those decisions.

If the plaintiffs are truly aggrieved, their remedy, if any they have, must be in the Supreme Court, by *certiorari.* In *Wildy* v. *Washburn,* (16 *Johns. Rep.* 50.) the Supreme Court say, that whenever the rights of an individual are infringed by the acts of persons clothed with authority to act, and who exercise that jurisdiction illegally, and to the injury of an individual, the person injured may have redress by *certiorari.* The same general jurisdiction of that Court has been asserted and declared in other cases; (*Kinderhook* v. *Claw,* 15 *Johns. Rep.* 538. *Lawton* v. *Cambridge,* 2 *Caines' Rep.* 179.) and seems to be supported by the powers acknowledged to belong to the Court of K. B. A *certiorari* lies (1 *Salk.* 145. *Anon. Holt,* Ch. J., in 1 *Ld. Raym.* 469.) to that Court, to correct a mistake made by commissioners of sewers; and though the K. B., in *The King* v. *King and others,* (2 *Term Rep.* 234.) refused that

writ to remove the assessment of the land tax, they placed the refusal on the ground of the great public inconvenience of the step ; and for the same reason they have refused it in the case of a poor rate. But it does not belong to me, to point out or vindicate the remedy at law. It is sufficient, upon the present motion, to say, that the remedy, if any, is at law, and that it does not fall within the ordinary jurisdiction of this Court.